CASE 67.—ACTION BY J. R. MOUNT AGAINST THE LOUIS-
VILLE & NASHVILLE R. R. CO., FOR DAMAGES
FOR PERSONAL INJURIES.—May 7.

# Louisville & Nashville R. R. Co. v. Mount

125 | 593
f135 | 486

Appeal from Garrard Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for plaintiff. Defendant appeals.
Reversed.

1. Carriers—Negligence—Injuries to Passenger Alighting from
Train—Evidence—Where plaintiff alleged that, while alighting
from defendant's train at a depot platform, he fell by reason
of defendant's negligence in failing to provide him a safe
means to alight, it being dark, and the steps of the car at
a dangerous distance from the platform, plaintiff could prove
the absence of a light or of any appliance defendant's train-
men were accustomed to provide for the use of passengers
in alighting.

2  Same—In an action for injuries to plaintiff, a passenger, while
alighting from a car, owing to defendant's alleged neligence
in failing to provide plaintiff a safe means to alight, the car
steps being alleged to. have been at an unsafe distance from
the platform, evidence that defendant's platform at the station
was a greater distance below the car steps than at other
places, and, by reason of that fact, necessarily dangerous,
was inadmissible.

3. Trial—Weight of Evidence—Questions for Jury—The jurors
are the sole judges of the weight of the evidence and the
credibility of the witnesses.

4. Carriers—Negligence—Injuries to Passenger—Questions for
Jury—In an action against a railroad for injuries to plaintiff
in alighting from a car, by reason of defendant's alleged
negligence in failing to provide a safe means to alight, the
questions whether the conditions rendered it unsafe for plain-

vol. 125—38

tiff to get off the train, and whether he exercised due care, were for the jury.

5. Same—Evidence—In an action for injuries to a passenger while alighting from a car, owing in part to the unsafe distance of the car steps from the platform, evidence of plaintiff's witnesses as to their measuring the distance from the car steps to the platform was inadmissible without proof either that the measurement was made on the car from which plaintiff fell, or from others commonly used by defendant, and that defendant's cars were supplied with steps of uniform size and depth.

6. Damages—Punitive Damages—Where, in an action against a railroad for injuries to a passenger in alighting from a car, the record failed to show gross negligence or any element of wrongdoing on defendant's part to warrant punitive damages, any recovery should have been limited to compensatory damages.

7. Carriers—Injury to Passenger—Contributory Negligence—Instructions—Where, in an action against a railroad for injuries to a passenger in alighting from defendant's car, the answer alleged contributory negligence, and there was some evidence on which to base it, an instruction on such point was proper.

8. Damages—Instructions—In an action against a railroad for injuries to a passenger in alighting from a car, the court should have instructed that, if the jury believed that the injury to plaintiff's knee was materially increased by the failure on plaintiff's part to use such personal care or to procure such surgical treatment as would have been used by a person of ordinary prudence, he was not entitled to any damages arising from such aggravation, if any.


BENJAMIN D. WARFIELD, L. L. 'WALKER and JOHN T. SHELBY, for appellant.

ROBERT HARDING, JOE ROBINSON and GREENE & VAN-WINKLE, for appellee.

(No briefs—record out of office.)


OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellee recovered in the court below a verdict and

Louisville & Nashville R. R. Co. v. Mount.

judgment for $400 damages against appellant for personal injuries alleged to have been sustained in alighting from one of its trains. Having been refused a new trial, it asks this court to review certain rulings of the lower court complained of and to reverse the judgment appealed from.

· The facts alleged in the petition as constituting the cause of action were, in substance, that when the train on which appellee was a passenger arrived at Lancaster, his place of residence, it stopped at the depot platform, and in attempting to step from the train to the platform appellee fell and injured his leg; that his fall was caused by the negligence of appellant in failing to provide him a safe way or means to alight from the train, it being dark and the steps of the car at an unsafe and dangerous distance from the platform. Appellant's answer denied the negligence charged in the petition, and alleged that appellee's injuries were caused wholly by his own negligence, and that his injuries were slight and would have been cured much sooner than they were but for the negligence of appellee in failing to obtain and have proper surgical treatment. The affirmative matter of the answer was controverted by reply. Numerous grounds for a new trial were urged by appellant in the court below, but we regard only two of them of sufficient importance to be considered. One of these is the complaint with respect to the admission of certain alleged incompetent testimony, and the other complaint as to the instructions given on the trial.

The testimony of appellee was to the effect that, when the train reached Lancaster, it stopped at the usual place; that after it stopped he buttoned his overcoat, took his suit case in hand, walked out of the car and down the steps of the coach, and from

the last one stepped to the depot platform, which is made of crushed stone, and upon reaching the platform with his foot the leg gave way, causing his body to fall violently to the platform and thereby injure his leg, especially the knee.  He further testified that his fall was caused by the unusual height of the lower step from the platform, which, he said, was 21 inches; that it was dark, and the unusual distance of the car step from the platform was unknown to him and could not be seen by him, and, though the conductor was only a few yards from him when he left the car, he received from him no warning of the distance to be stepped, or of the danger attending his alighting, nor was he furnished by any employe of appellant a light for seeing the way, or stool or other appliance to assist him to the platform.  Other witnesses testified for appellee as to a subsequent measuring of the distance between the lower steps of passenger cars to the platform at the place where appellee fell, and their testimony, like his, fixed the distance at 20 or 21 inches.  Appellee also introduced testimony that stools for assisting passengers to alight from cars, where the height of the steps from the station platform was unusual, were customarily used by appellant's train employes at stations.  The testimony of appellant conduced to prove that at the place where appellee stepped from the car the distance from the last step of the car to the ground was not unusual, and that with ordinary care one leaving a car under circumstances similar to those surrounding appellee at the time of receiving his alleged injuries could step from the last step of the car to the platform without risk or danger.  Several of appellant's witnesses also testified that after appellee received his fall they, at the place of the accident, measured the

distance from the last step of the car in which he rode to the platform, and it was from 17 to 18 inches. Some of them also testified that appellee, only a few minutes after receiving his injuries, and again on a later occasion, said, with reference to the accident, that he hurriedly alighted from the car after it stopped, and upon reaching the platform stepped upon a piece of coal or other like substance which tunred under his foot and caused him to fall. Appellant's testimony also showed that its trainmen had never furnished stools at the Lancaster depot for the use of passengers alighting from its trains, and that it was not customary for its trainmen to render personal assistance to male passengers of appellee's vigor and strength in getting off the cars.

While the matter principally complained of in the petition was the unusual height of the car steps from the platform, after all, the question of whether it was unsafe or dangerous for appellee to get off the train depended upon the conditions then existing. Stepping from the car at the same place in the daytime doubtless would have been attended with no danger to appellee, notwithstanding the unsafe height of the car steps from the platform, but to do so at night, without a light to guide him or appliance to break the distance between the last car step and the platform, might have made the act of alighting dangerous. For these reasons we think it was competent, under the averments of the petition, for appellee to prove, as he was permitted to do, the absence of a light or of any appliance appellant's trainmen were accustomed to provide on that road for the use of passengers in alighting from its cars.

But we think the trial court erred in permitting appellee to prove that appellant's station platform

at Lancaster is a greater distance from and below its car steps than at other places and by reason of that fact necessarily dangerous. The danger, if any, of alighting from appellant's cars at Lancaster could not properly be established by comparison, but must be shown by the conditions that existed at the time and place of the accident; that is, that the situation of the platform was such as to make the distance thereto from the steps of the cars not only unusual, but so great as to be dangerous for an ordinarily prudent person to attempt to alight thereon from the train under such circumstances as obtained at the time appellee received his injuries. We cannot agree with counsel for appellant that there was no evidence whatever as to the danger of alighting from the train under the circumstances attending the accident to appellee. Without expressing an opinion whether the weight of the evidence was for or against appellee, it is sufficient to say there was some evidence that tended to support his contention. The jury were the sole judges of the weight of the evidence and the credibility of the witnesses, and it was for them to determine whether the conditions of appellant's making were such as to render it unsafe for appellee to get off the train, and whether, under the circumstances, he exercised such care as would be expected of an ordinarily prudent person. We also think that, in order to make competent the proof of the measuring from the car steps to the platform made by appellee's witnesses, it should also have been proved either that their measurement was made on the car from which appellee fell, or from others commonly used by appellant on its railroad passing Lancaster, and that its passenger cars on that road are supplied with steps of uniform size and depth.

But the most serious error presented by the record we find in the instructions. Instruction No. 1 does not correctly give the measure of damages. What is said therein on the question of damages allowable if the jury find for appellee should be stricken out, after the word "knee," and in lieu thereof the lower court on the next trial should add to the instruction the following: "You should, in that event, find for plaintiff such a sum in damages, if any, as you may believe from the evidence will fairly and reasonably compensate him for the physical and mental suffering, if any of either, and for the impairment, of his ability to earn money that resulted from the injury to his knee and were directly caused by the negligence, if any, of defendant complained of, but such damages should not, altogether, exceed $10,000." Instruction No. 2, which defines gross negligence and advised the jury that they might allow punitive damages, was clearly improper, and should not again be given. The record fails to show gross negligence or any element of wrongdoing on appellant's part that would warrant the infliction of punitive damages, therefore the recovery, if any, should be limited to compensatory damages. Southern Ry. Co. in Ky. v. Goddard, 89 S. W. 675, 28 Ky. Law Rep. 523; Lexington Ry. Co. v. Fain, 80 S. W. 463, 25 Ky. Law Rep. 2243; McHenry Coal Co. v. Sneddon, 98 Ky. 686, 34 S. W. 228; Sedgwick on Damages, section 387. Instruction No. 3 conversely states the law contained in the first part of instruction No. 1, and may, if deemed proper by the lower court, be given again. Instruction 4 told the jury in what state of case they would be authorized to find appellee guilty of contributory negligence. An instruction on that point was proper, as the answer contains the plea of contributory negli-

gence and there was some evidence upon which to base it. The instruction, though in some respects inaptly expressed, is substantially correct. We would suggest, however, that before giving it again the court should strike out the word "uses" in the third line and insert in lieu thereof the words "would use." Instructions A and B should not have been given, but in lieu of both the following should be given on the retrial of the case: "If the jury find for plaintiff, in estimating his damages, they should allow him only such a sum as will compensate him for his injuries as defined in instruction No. 1, and, if they believe from the evidence that the injury to his knee was materially increased or aggravated by a failure, if any, on his part to use such personal care or to procure such surgical treatment in the effort to effect a cure as would have been used or employed under similar circumstances by a person of ordinary prudence, they should not allow him any damages that may have resulted from such aggravation, if any, of his injuries."

Judgment reversed and cause remanded, with directions to the lower court to grant a new trial, and for further proceedings consistent with the opinion.