CASE 60.—ACTION BY L. W. SMITH AGAINST THE LOUIS-
VILLE & NASHVILLE RAILROAD COMPANY FOR
DAMAGES FOR PERSONAL INJURIES.—November
26, 1909.

## Louisville & Nashville R. R. Co. v. Smith

Appeal from Jefferson Circuit Court (Common
Pleas Branch, First Division).

EMMET FIELD, Judge.

Judgment for plaintiff, defendant appeals.—Af-
firmed.

1. Appeal and Error—Review—Weight of Evidence.—The jury
   has the exclusive right to weigh conflicting evidence.
2. Railroads—Injury at Crossing—Right of Action—What Law
   Governs.—The right of recovery for injuries at a railroad
   crossing in another state is, in the absence of a statutory
   provision, to be determined by the laws of that state as de-
   clared by its Supreme Court.
3. Carriers—Injury at Station—Contributory Negligence.—A
   person going to a train then due to meet a friend, who exer-
   cised due care to observe the situation in passing from the
   depot to the train, was not so negligent in undertaking to
   pass between cars three feet apart on an intervening track
   as to prevent his recovery for injuries by one of the cars
   suddenly closing the space under the rule in Alabama that
   the failure to stop, look and listen before crossing a railroad
   track is such contributory negligence as will defeat a re-
   covery for injuries, in the absence of evidence that the
   company was guilty of reckless or wanton negligence.
4. Carriers—Care of Persons Accompanying Passenger.—
   Though a carrier does not owe a person going to a train to
   meet a friend the degree of care due a passenger, it must
   exercise ordinary care for his safety.
5. Carriers—Care of Persons Accompanying Passenger.—A per-
   son going to a train to receive a passenger need not wait un-
   til the train has actually arrived before going to the platform
   in order to avail himself of the rule of law that requires a
   carrier to exercise ordinary care for his safety.

Louisville & Nashville R. R. Co. v. Smith.

6. Carriers—Injuries at Station—Care Due Travelers.—Where an opening in a train at a station has been made for the passage of persons, the duty to give warning before closing the space is not satisfied by merely ringing the engine bell or sounding the whistle.

7. Carriers—Injuries at Station—Negligence—Question for Jury. —Whether sufficient warning was given before closing the space left for the passage of persons between cars at a station is a question for the jury.

8. Carriers—Injury at Station—Instruction.—Where the evidence is conflicting as to whether defendant exercised sufficient care to give warning before closing the space left for the passage of persons between cars at a crossing, it is proper to instruct to find for defendant, if plaintiff would not have been injured except for his contributory negligence, unless when he came in peril defendant's employes could, by the exercise of ordinary car, have discovered his peril and prevented the injury.

9. Damages—Punitive Damages—What Law Governs.—The laws of the state wherein a personal injury occurred govern the question whether punitive damages should be awarded.

10. Evidence—Presumptions—Law of Other State.—In the absence of proof of the law as to punitive damages for personal injuries in the state where the personal injuries occurred, the law of that state is presumed to be the same as that of the forum.

11. Negligence—"Gross Negligence."—"Gross negligence" is the absense of slight care.

12. Damages—Punitive Damages—Personal Injuries.—Where the negligence from which a personal injury results is gross, punitive damages may be awarded.

13. Carriers—Injury at Station—Negligence—Sufficiency of Evidence.—Evidence, in an action for injuries at a station, held to show that plaintiff was injured by defendant's reckless disregard of its duty to plaintiff.

14. Appeal and Error—Harmless Error—Punitive Damages—Instructions.—The objection to an instruction on punitive damages that the words "or may not" should have been inserted after the words "then you may" in the clause allowing an award of such damages is too technical for consideration.

15. Damages—Propriety of Instructions on Punitive Damages.— Where there is evidence that the injury at a crossing was caused by a reckless disregard of human life, an instruction on the subject of punitive damages is proper.

10. Damages—Excessive Damages—Personal Injuries.—Verdict for $12,500 for permanent personal injuries held not excessive.

HELM & HELM and B. D. WARFIELD for appellant.

## POINTS AND AUTHORITIES.

The defendant on this appeal contends that the following were errors prejudicial to the defendant's substantial rights:

1. That under the law of Alabama as proven in this case and as it exists, the plaintiff was as a matter of law guilty of contributory negligence in endeavoring to pass between the ends of cabooses or cars which were attached to engine with steam up, and that therefore the defendant's motion for a peremptory instruction should have been sustained. Glass v. Memphis & C. R. Co., 94 Ala., 591, 10 So. Rep., 215; Ga. Pac. R. Co. v. Lee, 92 Ala., 262, 9 So. Rep., 232; L. & N. R. Co. v. Crawford, 98 Ala., 220, 8 So. Rep., 242; Leak v. Ga. Pac. R. Co., 90 Ala., 161, 8 So. Rep., 245; Pannell v. Nashville F. & S. R., 97 Ala., 289, 12 So. Rep. 263; E. Tenn., Va. & Ga. v. Kornegay, 92 Ala., 228, 9 So. Rep. 557; L. H. & St. L. R. Co. v. Jolly's Adm'r, 28 R., 992; Elliott on Railroads, Vo. 4, Sec. 1793; So. Ry. v. Clark, 32 R., 69; Sou. Ry. v. Thomas, 29 R., 79; Brackett's Adm'ra v. L. & N. R. Co., 111 S. W., ( 710.

2. That the third instruction given by the court was erroneous and prejudicial in that it permitted the jury to find for the plaintiff notwithstanding his contributory negligence if they believed that "when the plaintiff came in peril from the train, the employes of the defendant in charge of the train could by the exercise of ordinary care have discovered his peril, and by ordinary care have prevented his injury," because it tendered a false issue to the jury, which confused and misled them, and upon which there was not a scintilla of evidence in the record to support a finding by them. 11 Ency. Pleading Practice, p. 170; L. & N. R. Co. v. Joshlin, 33 R., 516; L. & N. R. R. Co. v. McCoombs, 21 R. 1232; L. & N. R. R. Co. v. Veach's Adm'r, 112 S. W., 869; (to be officially reported.).

3. That the fourth instruction on the measure of damages was erroneous and prejudicial in allowing the jury to award the plaintiff punitive damages if they found the defendant guilty of gross negligence. This instruction is erroneous for several reasons: A. Because in a form which this court has held to be bad and cause for reversal. I. C. v. Houchins, 121 Ky., 526-535. B. Because there is not a scintilla of evidence upon which to base a charge of gross negligence. L. & N. R. Co. v. Kingmay, 18 R.,

Louisville & Nashville R. R. Co. v. Smith.

83; Andrews v. Singer Mfg. Co., 20 R., 1089; Lex. Ry. Co. v. Fain. 25 R., 2243; Sou. Ry. v. Goddard, 121 Ky., 567; Sou. Ry. v. Hawkins, 121 Ky., 415; L. & N. R. Co. v. Mount, 125 Ky., 599; Ill. Cen. R. Co. v. Lence, 30 R. 988; Sou. Ry. v. Brewer, 32 R., 1374; Pollock on Torts, p. 157; Jaggard on Torts, p. 392 (and other text books); Covington Saw Mill v. Drexilius, 120 Ky., 493. C. Because the law of the place of the injury, and which governs the plaintiff's rights, does not award punitive damages for so-called gross negligence.

4. Because the defendant's theory of the case was not submitted to the jury, and the instructions given are involving and confusing. L. & N. R. Co. v. King, 115 S. W., 196 (to be officially reported).

W. O. BRADLEY and SNODGRASS & DIBRELL for appellee.

## POINTS AND AUTHORITIES.

1. Action based on Section 5476, Alabama Code, which places burden of proof on railroad to show no negligence.

2. Reply to plea of negligence sets up affirmative matter in avoidance which was not denied, hence, must be taken for confessed. Section 126, Ky. Civil Code. This renders affirmance absolutely certain.

3. Answer in attempting to plead law of Alabama governing contributory negligence fails to specifically mention the authority and page, hence, not good. Law of foreign State must be plead with same minuteness as any other fact. Therefore there is, in reality, no plea of contributory negligence. Roots v. Merriweather, 8 Bush, 401-2.

4. The answer does not reply upon any law of Alabama which disallows punitive damages (appellee contending that there is no such law), and, hence can not now be relied on. Chesapeake & N. R. v. Venable, 111 Ky., 47.

5. The ringing the bell or sounding of the whistle is no answer to charge of negligence, as those signals are not intended as signals to passengers seeking to get on the train, and not likely to be noticed in the confusion of two trains passing each other. Terry v. Louett, 78 N. Y., 378.

6. Protecting friends who go to meet travelers leaving a train are entitled to protection, and railroads owe special obligations to them different from those due the general public. Montgomery & Eufala R. Co. v. Thompson, 77 Ala., 457, and authorities therein cited. See also M. R. R. Co. v. Thompson, 77 Ala., 448, (54 Am. Rep., 73; McKee v. Mich Cent., 51 Mich., 601, (47 Am. Rep., 596; Galloway v. C., M. & St. Paul R. R., 56 Minn., 346.

7. A common duty rests on all persons, artificial and natural, who own real estate on which the public is expressly or impliedly invited to enter, to keep it free from traps or pitfalls. Persons suffering from neglect of such duty is entitled to damages. Montgomery & Eufala R. Co. v. Thompson, 77 Ala., 456.

8. Doctrine of "stop, look and listen" does not apply here,' because appellant was under special obligation to protect appellee. Fetter on Carriers, 348, 397, and authorities cited; Warfield v. N. Y. & S. E. R., 8 App. Div. 479, s. c. 40 N. Y. Sup., 783; Pennell v. Nashville S. R., 97 Ala., 298, s. c. 12 Sou., 236; Memphis & R. Co. v. Copeland, 61 Ala., 376.

9. The cases cited by appellant concerning contributory negligence and decided by the Alabama court have reference to persons to whom the company owed not special duty, and who attempted to cross at public highways, etc.

10. The Kentucky cases cited by appellant that appellee was guilty of negligence are inapplicable, except the cases of Brackett's Adm'r v. L. & N. R. Co., 111 S. W., 710, which supports the contention of appellee.

11. Doctrine of Contributory negligence is not applicable, because the contributory negligence pleaded was not the proximate cause of the injury. Fraser v. So. & N. Ala., R. R., 1 Sou. 89-90 (Ala.); Thompson v. Duncan, 76 Ala., 334; Cent. of Ga. R. Co. v. Hyatt, 151 Ala., 363; Sou. R. R. Co. v. Jones, 143 Ala., 334; 7 Am & Eng. Enc. of Law, 2nd Ed., 381; Sav. & Mem. R. R. Co. v. Shear, 58 Ala., 672; Wilson v. L. & N. R. R., 85 Ala,, 269; C. & W. R. R. Co. v. Bradford, 85 Ala., 574; N. B. S. T. R. Co. v. Calderwood, 89 Ala., 274; So. & N. Ala. R. R. Co. v. Donovan, 4 Sou., 142 (Ala.); Kan. City, M. & B. R. Co. v. Lackey, 21 Sou. 447; Beach on Contributory Negligence, Secs. 24 and 31; Fairbanks v. Kerr, 70 Penna. State, 86 (10 Am. Rep. 664.).

12. Gross negligence has been in Alabama held to be equivalent to wantonness or willfulness. Birm., L. & P. Co. v. Nolan, 134 Ala., 329; A. G. S. R. v. Arnold, 63 Ala., 226; Seeds Case, 115 Ala., 670.

13. Where negligence is gross, wanton, reckless or willful, contributory negligence does not excuse the company. A. G. S. R. Co. v. Guest, 144 Ala., 373; A. P. R. Co. v. ——————, 9 Sou., 231 (Ala.).

14. Where the company knows that persons are in the habit of congregating at, or near, a depot platform, or that there is a likelihood of persons congregating on the track, it is its duty to guard against conflicting injury or death. A. G. S. R. Co. v. Guest, 144 Ala., 379; L. & N. R. Co. v. Lowe, 80 S. W., 769, and authorities cited (Ky.); L. & N. R. Co. v. Brown, 107 S W., 312 (Ky.);

C. & O. R. Co. v. Nipp's Adm'r, 100 S. W., 247 (Ky.); Rader's Adm'r v. L. & N. R. R. Co., 104 S. W. 774 (Ky.); L. & N. R. R. Co. v. Schuster, 10 Ky. Law Rep.. 65; Conley v. C. R. R., 89 Ky., 402; S. W. R. R. Co. v. Meadows, 95 Ala., .137; L. & N. R. R. Co. v. Popp, 96 Ky., 99.

15. Necessary to keep a lookout at all such places. Shelby's Adm'r v. Cin'ti, etc., R. Co., 85 Ky., 224; L. & N. R. R. Co. v. Lowe, 80 S. W, 769 (Ky.); L. & N. R. R. Co. v. Popp, 96 Ky., 99; Same v. Veech, 112 S. W., 870 (Ky.); C. & O. R. Co. v. Nipp's Adm'r, 100 S. W., 274 (Ky.); Rader's Adm'r v. L. & N. R. R. Co., 104 S. W., 774 (Ky.).

16. Where company knows public habitually uses its track in populous community as a footway, so that at any moment persons may be expected to be found thereon, such knowlede is equivalent to seeing them there. I. C. R. Co. v. Murphy, 97 S. W., 730 (Ky.); L. & N. R. Co. v. McNary, 108 S. W., 899 (Ky.).

17. The railroad company's acting, or failing to act, under circumstances known to it that its conduct is likely to result in injury, held to be reckless, indifferent, and the injury wantonly inflicted. Mobile, J. & R. C. R. Co. v. Smith, 151 Ala., 131

18. If likelihood to safty of passerby is known to person in control of train, and through reckless indifference he consciously and intentionally causes a train to run over a crossing at a reckless rate of speed, same amounts to wantonness, and has been uniformly so held. M. & C. R. Co. v. Martin, 117 Ala., 376, 382 (23 Sou., 231); L. & N. R. Co. v. Webb, 97 Ala., 308 (12 Sou. 374); Birm. R'y & Elec. Co. v. Baker, 132 Ala., 507 (31 Sou. 618); Highland Ave. & Belt R. Co. v. Robbins, 124 Ala., 113 (27 Sou., 432, 82 Am. State, 135); Sou. R. Co. v. Crenshaw, 136 Ala., 573 (34 Sou., 913); Haley v. K. C. & M. B. R. Co., 113 Ala., 640 (21 Sou., 357).

19. All that is meant by wanton, willful or intentional negligence is the conscious failure on the part of the defendant's servants to use reasonable care to avoid injury after discovering the danger of plaintiff. An intent to injure is not essential on the part of defendant's servants, notwithstanding contributory negligence. It is enough if such wantonness and recklessness as to probable consequences on the part of the servant as implies willingness to inflict, or indifference as to whether injury is inflicted A. G. S. R. Co. v. Williams, 104 Ala., 230.

20. That appellant is responsible, and that contributory negligence can not be pleaded in this case, see positive opinions in C., N. O. & T. P. R. Co. v. Thompson, 64 Miss., 589; Nichols' Adm'r v. W. O. & W. R. Co., 83 Va., 9 (55 S. E., 117); Brackett's Adm'r v. L. & N. R. Co., 111 S. W., 710.

21. To constitute contributory negligence the plaintiff must have a knowledge of the danger to which he is exposed. Beach on Contributory Negligence, Sec. 36; City of Henderson v. O'Haluran, 70 S. W., 664 (Ky.).

22. It was duty of appellant to provide appellee reasonably safe approach to passenger train, and operating cars on a switch between depot and assenger train is negligence. The road should be free from all obstruction when a passenger train stops at a station. A. T. & S. F. R. Co. v. Holloway, 80 Pac. Rep. 31; Terry v. Joulett, 78 N. Y., 378.

23. That punitive damages are authorized in this case by the law, see Thompson on Negligence, Secs. 19, 20, 22 and page 899; Columbus R. Co. v. Bridges, 86 Ala., 448; Patterson v. So. & R. Co., 89 Ala., 318; Ala., etc., Co. v. Arnold, 80 Ala., 600; Kilkinson v. Searcy, 76 Ala., 176; 86 Ala., 406; 63 Ala., 266; 99 Ala., 314.

24. In the latter case it was held that the injury need not be willful. Ala., etc., Co. v. Hill, 90 Ala., 71; 125 Ala., 384; Sou. R'y Co. v. Hawkins, 28 Ky. Law Rep., 366; I. C. R. Co. v. Lence, 30 Ky. Law Rep., 988; MeHenry Coal Co. v. Snedden, 98 Ky., 686; L & N. R. Co. v. Kingman, 18 Ky., 836; Sou. R'y Co. v. Brewer, 32 Ky. Law Rep., 1374; Sutherland on Damages, Vol. 1, 724; Hutchison on Carriers, Sec. 1436; Sherman & Redfield on Negligence, Vol. 2, Sec. 748.

OPINION OF THE COURT BY JUDGE CARROLL— Affirming.

The appellee, Smith, at Blount Springs, Ala., while on his way to the depot from which passengers got on and off trains, was caught between the bumpers of the cabooses on two trains on the siding between the depot and the passenger platform. Both of his hands were crushed so badly that his right hand had to be amputated and his left hand is practically useless. To recover damages for the injuries sustained he brought this action, and upon a trial before a jury was awarded $12,500.

A reversal is asked upon four grounds: First, that under the laws of Alabama the plaintiff was guilty of contributory negligence in endeavoring to pass be-

tween the trains, which were attached to engines with steam up, and therefore the defendant's motion for a peremptory instruction should have been sustained; second, that the court erred in instructing the jury that they might find for the plaintiff, Smith, notwithstanding his contributory negligence, if they believed that when he came in peril from the trains the employes of the company in charge of the trains could, by the exercise of ordinary care, have discovered his peril and by ordinary care have prevented his injury; third, that the court erred in allowing the jury to award punitive damages if they found the defendant guilty of gross negligence; fourth, that the company's theory of its defense was not submitted to the jury, and the instructions given are involved in confusion.

The evidence upon all material points is conflicting but with the weight of it on any issue we are not particularly concerned, as the jury have the exclusive right, in cases like this, to decide controverted questions of fact. Therefore, having in mind only the controlling facts, and without attempting to set out the testimony in detail, we may say that the evidence is, in substance, as follows: Blount Springs is a small village immediately on the line of the appellant's railroad, and at the time of the injuries complained of it was frequented by a number of people who went there to visit the springs in the neighborhood. The appellee, a native of Texas, arrived in Blount Springs for the first time on the morning of July 22, 1907, and spent the day in and around the hotel and the village. About 5:40 in the afternoon he started on his way to the passenger platform for the purpose of meeting a friend he was expecting on the northbound Decatur passenger train that was due to arrive about the time he went to the station. The railroad

at Blount Springs runs north and south, and on the east side of the road is situated the depot, the houses that constitute the village, and the springs. The track nearest to the depot is a long siding, and between this siding and the main track is the platform used by passengers in getting on and off trains standing on the main track.

At the time appellee started to go to this platform there were on the siding four trains. One of these trains, known as No. 12, was a long freight, headed north, that went in on the south end of the siding, and pulled up until its caboose was opposite the depot and then stopped. Soon thereafter No. 21, known as the "water train," consisting of an engine, two cars, and a caboose, backed in on the siding from the south end, and stopped with its caboose some 30 to 60 feet from the caboose of train No. 12 thereby leaving a space of that distance between the two cabooses immediately in front of the depot, through which persons going to and from the passenger train to the depot might pass. Shortly after the water train had backed in, a long freight train, known as No. 19, going south, also backed in on the south end of the siding, and stopped with its caboose some 40 to 80 feet from the engine of the water train. After this, passenger train No. 8, going north, also ran partially in on the south end of the siding, but could not go far enough to clear the main track on account of the freight trains. About the time that passenger train No. 8 went in on the siding, passenger train No. 5, going south, came up on the main track, and stopped in front of the depot to permit passengers to get on and off.

With the four trains on the siding, and the spaces before mentioned that had been left between them,

passenger train No. 5 going south could not pass passenger train No. 8 standing partially on the south end of the siding and partially on the main track.   So that, when passenger train No. 5 started on its journey south, signals were given to the engineers on the water train and on train No. 19 to close up the spaces, in order that passenger train No. 8 might pull far enough in on the siding to allow passenger train No. 5 to pass in safety.   But before the space between the cabooses in front of the depot was closed at all by the moving of the water train, a number of passengers and people had passed between the cabooses going to and from the train and the platform. Appellee was not at the depot or observing the trains when the space between the cabooses was 30 to 60 feet, or when the signals to close the space were given, or when the water train started back, but about the time he reached the depot on his way to the platform the caboose of the water train had been backed to within 3 to 10 feet of the caboose of train No. 12, and was standing still, and the caboose of train No. 19 had been backed close to the engine of the water train.

Just as appellee, who stopped, looked, and listened to ascertain if the passage was safe, stepped on the siding, the water train suddenly backed, and he was caught between its caboose and the caboose on train No. 19, which had never moved its position after going on the siding.   The evidence is very satisfactory that when the water train by backing closed up the original space of 30 to 60 feet between it and train No. 19 to a distance of from 3 to 10 feet, it stopped for a few minutes, and it may be inferred from the testimony that the trainmen did not intend, at this time, to run it any closer to the caboose of train No. 19, and that

the sudden movement of the water train that caught appellee was caused by the slack running out of train No. 21, the caboose of which had been stopped within a few feet of the engine of the water train, and striking the engine of the water train, thereby shoving it and its cars back.

At the moment appellee was injured the trainmen who were giving the signals that moved the water train and train No. 19, were standing between the siding and the main track, but before this, and when the passengers from No. 5 were being discharged and the signals to close the space were about to be given, these trainmen, and probably others, notified people to get out of the way; that the space would be closed. Whether or not any persons were on the rear platform of the caboose of the water train, or the caboose of train No. 12, when appellee was injured is sharply disputed; the evidence for the company being that one brakeman was on the rear platform of the water train caboose, and one brakeman on the rear platform of the caboose of train No. 12, while the evidence for the appellee is that there was no brakeman at that time on either of these cabooses. The evidence also conduces to show that, just as the cabooses came together one of the trainmen, and probably a spectator, holloed at appellee in an effort to warn him of his danger, but it was too late.

From this statement it may be summarized that there was evidence sufficient to sustain the verdict conducing to show: (1) That when the trains were put on the siding, and until passenger train No. 5 started, there was a space of from 30 to 60 feet in front of the depot between the cabooses, left for the purpose of permitting persons to go to and from the depot to the passenger train; (2) that when pas-

senger train No. 5 started, it was intended to close the space of 40 to 80 feet between the caboose of train No. 19 and the engine of the water train, and to partially at least close the space in front of the depot between the caboose of the water train and the caboose of train No. 12, so that No. 8 might clear the main track and allow No. 5 to pass; (3) that when the caboose of the water train came within 3 to 10 feet of the caboose of train No. 12, the water train stopped, and after stopping for a few minutes it was put in motion, and its caboose caused to hit the caboose of train No. 12; (4) that at the time Smith was injured the bells on the engine of train No. 19 and on the engine of the water train were ringing; (5) that train No. 8, on which appellee expected the person he went to the depot to meet, would have reached the depot platform a few minutes after he started to go to the platform; (6) that appellee did not know anything about the movements of the trains until he went to the depot to cross, and then there was a space in front of the depot of 3 to 10 feet between the cabooses of train No. 12 and the water train, both of which were standing still; (7) that before appellee went between the cabooses, he stopped, looked, and listened to ascertain if it would be safe to cross, and had no warning or notice that it would not.

Upon these facts the court gave to the jury the following instructions:

"No. 1.   The court instructs the jury that the law is for the plaintiff, and they should so find, unless they shall believe from the evidence that, before the defendant moved its trains, or either of them, which were standing on the passing switch at Blount Springs, Ala., at the time mentioned in the petition

to close the passageway across the said switch be-
tween the ends of its two freight trains then standing
on said switch track, the employes of the defendant
in charge of the train by which plaintiff was injured
exercised ordinary care to give timely and reasonably
sufficient notice that the train was about to be moved
to close the said passageway, and exercised ordinary
care to prevent injury to the plaintiff from the mov-
ing train, unless they shall further believe from the
evidence that the plaintiff himself was negligent, and
thereby helped to cause or bring about his injuries;
that but for his own negligence, if any there was, he
would not have been injured.

"No. 2.   But if the defendant did give timely and
reasonable notice, as mentioned in instruction No. 1,
that the passway between the said trains was about
to be closed by backing one or both of said trains,
and did exercise ordinary care to prevent injury to
the plaintiff from the moving train, the law is for the
defendant, and so they should find.

"No. 3.   It was the duty of the plaintiff, before he
entered upon the passway between the said two trains,
to exercise ordinary care for his own safety, and to
stop and look and listen to ascertain whether he could
cross the track without injury from the said trains;
and, if he failed to discharge either of these duties,
and by reason of such failure he helped to cause or
bring about the injuries of which he complains, and
he would not have been injured but for his contribu-
tory negligence in that respect, then the law is for
the defendant, and so they should find, even though
you may believe from the evidence that the defendant
was negligent in failing to give notice of the fact
that the train was about to be backed to close the
passageway, if such is the fact, unless you shall

further believe from the evidence that when the plaintiff came in peril from the train, the employes of the defendant in charge of the train could, by the exercise of ordinary care, have discovered his peril, and by ordinary care have prevented his injury.

"No. 4. If you find for the plaintiff, you should find in such a sum as will reasonably and fairly compensate him for, any pain and suffering, mental and physical, caused him by his injuries, and for any pain and suffering which it is reasonably certain from the evidence he will endure in the future as a result of his injuries, and for any permanent reduction in his power to earn money directly resulting from his injuries; and, if you shall believe from the evidence that his injuries were caused by the gross negligence of the defendant, then you may in your discretion find in such a further or additional sum as you may think right and proper under the evidence, and on these instructions, not exceeding in all the sum of $50,000, the amount claimed in the petition. If you find for the defendant, you will say so, and no more.

"No. 5. Ordinary care means the degree of care usually observed by ordinarily careful and prudent persons under the same or similar circumstances. Negligence means a failure to observe ordinary care. Gross negligence means a failure to observe slight care. Contributory negligence means a failure upon the part of the plaintiff, if he did so fail, to observe care for his own safety, as mentioned in instruction No. 3, and by reason of such failure he helped to cause or bring about his injuries, and when but for such failure he would not have been injured."

Under the law of this state, as settled in more than one opinion of this court, the facts of this case authorized the trial court to instruct the jury as it did, and

warranted the jury in finding a verdict in favor of
Smith and assessing the damages at the amount
awarded. But, as the injuries occurred in the state
of Alabama, the right of Smith to recover, and the
propriety of the instructions given, is, in the absence
of any statutory law in that state on the subject, to
be determined by the laws of that state as declared
by its Supreme Court. L. & N. R. Co. v. Whitlow,
43 S. W. 711, 19 Ky. Law Rep. 1931, 41 L. R. A. 614;
Illinois Central R. Co. v. Jordan, 117 Ky. 512, 78 S.
W. 426, 25 Ky. Law Rep. 1610; L. & N. R. Co. v. Gra-
ham, 98 Ky. 688, 34 S. W. 229, 17 Ky. Law Rep. 1229;
L. N. R. Co. v. Harmon, 64 S. W. 640, 23 Ky. Law
Rep. 871; L. & N. R. Co. v. Wyatt, 93 S. W. 601, 29
Ky. Law Rep. 437; L. & N. R. Co. v. Keiffer, 113 S. W.
433. That court has frequently considered questions
like the one involved in this case, and counsel in sup-
port of their respective contentions have furnished us
with an ample array of authorities. And so we will
proceed to examine these decisions and apply them
to the evidence and the law as given by the trial
judge, for the purpose of ascertaining whether or not
the errors assigned are well taken.

Taking up, first, the question of contributory
negligence:

The theory of the company is that at the time
appellee went through the opening the space between
the two cabooses was not over three feet, and that if
the water train was not at that time moving, it had
only stopped a moment before, and appellee from his
position could and should have known that the trains
were closing up the space; that as there was then no
passenger train at the platform, and the passenger
train upon which appellee expected his friend to ar-
rive was on the siding some distance off, appellee in

attempting to cross as he did went into an obviously dangerous place, which, if he desired to cross, he could have avoided by crossing on the platform of one of the cabooses. It may be conceded that, if we should accept as true this view of the case, there would be much force in the argument that the appellee was guilty of such contributory negligence as authorized a direction to the jury, under the law as expounded by the Supreme Court of Alabama, to find a verdict for the company.

In Pannell v. Nashville, F. & S. R. Co., 97 Ala. 298, 12 South 236, the facts were as follows: Several parrallel tracks crossed streets in a town, and on one of these tracks cars had been placed for the purpose of being loaded and unloaded, but at the crossing a space of 15 or 20 feet was left between the cars for the use of the public. The cars had been placed in this way on the day preceding the accident, and Pannell, the injured party, who resided near the crossing, was entirely familiar with the location of the cars. On the day after the cars had been so placed, he passed through this opening, but on his return in about 30 minutes the opening had been materially diminished by an engine that was moving the cars, and in attempting to pass through he was caught between the drawheads and crushed. At the time the cars were placed on the track they were not connected with any engine, nor in charge of any employe, and no notice that the company intended to move them was given until shortly before the accident, when an engine was attached to the cars, and they were shifted about. In the course of the opinion the court said: "When Pannell crossed the track going west, the opening at the crossing was 15 or 20 or more feet, and the cars on either side were stationary. Everything about the

crossing indicated .perfect security in traveling the highway. When he returned appearances had greatly changed. The lumber cars left on the north side of the crossing had been moved so as to nearly block up the highway. Only a small opening was left. This should have been a warning to him that all was not well. He should have looked and listened. He was clearly guilty of contributory negligence in attempting, under the circumstances, to pass through the narrow opening. Had he looked at any time after passing the main track, save a narrow space hidden by a stack of shingles, he could not have failed to see the engine on the spur track with steam up.''

In L. & N. R. R. Co. v. Crawford, 89 Ala. 244, 8 South. 243, 244, 245, a watchman while in the discharge of his duties was injured by a switch engine pushing a box car. In announcing the general rule the court said: ''It is culpable negligence to cross the track of a railroad at a highway crossing without looking in every direction that the rails run to ascertain whether a train is approaching. If a party rushes into danger which by ordinary care he could have seen and avoided, no rule of law or justice can be invoked to compensate him for any injury he may receive. He must take care, and so must the other party. * * * We regard the question as settled in Alabama by our rulings cited above, and that a failure to employ the senses on approaching a railroad crossing, when such employment would insure safety, is as a matter of law contributory negligence, and a complete defense to a suit for injuries sustained by the negligent handling of a railroad train, unless such negligence was so reckless or wanton as to be in law the equivalent of wilful or intentional. * * * No man should put himself in peril; and, if he negligently does so, the duty of active effort to avert in-

jury is as binding on him as is the defendant corporation's duty to do all in its power to extricate him. If he fails in this, when such effort would probably save him from harm, he cannot be heard to complain that the defendant failed to do for him what he neglected to do for himself. We have stated the duty required of mere travelers.''

In East Tennessee, Virginia & Georgia R. Co. v. Kornegay, 92 Ala. 228, 9 South. 557, Kornegay was injured while on his way to a depot to see a person who was a passenger on an east-bound train that had just come in. This train stopped on the main track, and a west-bound train took the side track, and its engine was standing still across a dirt road. Kornegay passed by the side of the engine and walked parallel with the track, and then turned and stepped on the side track in the direction of the east-bound train, which was still standing on the main track. Just as his foot touched the crossing on the side track, he was knocked down by the engine of the west-bound train and injured. The court said: ''It appears from Kornegay's own testimony that he was guilty of negligence proximately contributing to the injury. It is plain that he undertook to cross the railroad track without stopping or looking or listening to ascertain if a train was approaching. He says himself that he did not stop or look. When he passed the engine, it was standing still on a downgrade. It appeared from the testimony that the engine could not have been put in motion without making a noise, which the plaintiff must have heard if he had been listening. He was not in apparent danger until he turned and stepped on the side track. He was bound to look and listen before attempting to cross the track. His neglect of this duty avoids his right of recovery, in the absence

of evidence tending to show that the defendant was guilty of negligence so reckless or wanton as to be in law the equivalent of wilful or intentional wrong.''

In each of these cases the rule is announced that the failure to stop and look and listen before crossing a railroad track is such contributory negligence as will defeat a recovery, in the absence of evidence showing that the company was guilty of reckless or wanton negligence. But in neither of them are the facts similar to those upon which the appellee rests his case. If we should assume that the railroad company in Alabama owed no higher duty to passengers or persons occupying the relation of appellee than it does to travelers at a public crossing, we should nevertheless feel obliged to hold that under the Alabama rule the appellee was not guilty of such con-tributory negligence as would defeat a recovery. The evidence introduced in his behalf shows that he was not negligent or inattentive, but that, on the contrary, before attempting to cross, he exercised ordinary care for his own safety by stopping and looking and listening. The appellee in attempting to go to the passenger platform was not a trespasser. He had a right to go there; and, although the company did not owe him the high duty attaching to a passenger, it did owe him the duty of exercising ordinary care for his safety. Montgomery & Eufaula Ry. Co. v. Thompson, 77 Ala. 448, 54 Am. Rep. 72; Berry v. L. & N. R. Co., 109 Ky. 727, 60 S. W. 699, 22 Ky. Law Rep. 1410; C. & O. Ry. Co. v. Meyer, 119 S. W. 183; Hutchinson on Carriers (3d Ed.) Sec. 991; Thompson on Negligence, Sections 2685, 2686.

The fact that the train upon which he was expecting his friend was not then standing on the main track at the depot for the purpose of discharging

passengers is a matter of small moment, as it was only a short distance off on the siding, and might reasonably be expected to reach the depot in a few minutes, and was in fact due to arrive. A person going to the train to assist or accompany or receive a passenger need not wait until the train actually arrives before going on the platform, in order to avail himself of the principles of law that require the carrier to exercise ordinary care for his protection and safety. He may go to the platform when he sees the train approaching, or when it is reasonably near, or at the time he believes it should arrive. This being so, when appellee went to the depot, and saw an opening between the two cabooses amply wide for passage to the platform; saw other persons going through it; saw the trains standing still—he had the right to assume that the opening through which he attempted to pass had been purposely left there to permit persons to go to and from the depot and platform. The fact that the opening was there was an invitation to avail himself of it to cross. When an opening like this is left in a place like this, it is the duty of the railroad company to exercise ordinary care to prevent injury to persons rightfully using it, and this duty, under circumstances like those proven in this case, is not fulfilled by ringing engine bells or sounding whistles.

The duty of the company in this respect is not discharged until, or unless, it has given reasonably sufficient warning to the public having the right to use the passway that it is about to be closed; and whether or not it performed its duty in this particular was in this case a question for the jury. Tested by the Alabama rule, the appellee was not guilty of such contributory negligence as would defeat a recovery,

and under the facts it was not necessary to show that
the company was guilty of reckless or wanton con-
duct that would be in law the equivalent of willful
or intentional wrong. This principle is only to be
applied when it is attempted to. avoid the conse-
quences of a state of facts that would amount to such
contributory negligence as would defeat a recovery in
the absence of willful or intentional wrongdoing on
the part of the company. When the injured person
has not been guilty of this character of contributory
negligence, it is not essential under the Alabama law
that the company should be guilty of willful or inten-
tional wrongdoing before he can recover. The Ken-
tucky Cases of Southern Railway Co. v. Clarke, 105
S. W. 384, 32 Ky. Law Rep. 69, 13 L. R. A. (N. S.)
1071, Southern Railway Co. v. Thomas, 92 S. W. 578,
29 Ky. Law Rep. 79, and Brackett's Adm'r v. L. &. N.
R. Co., 111 S. W. 710, 33 Ky. Law Rep. 921, 19 L. R.
A. (N. S.) 558, cited by counsel, are not in conflict
with the views we have expressed on the subject of
contributory negligence. On the contrary, they are
in harmony with them.

The next argument presented as grounds for re-
versal is that the court erred in instructing the jury
that, if they believed appellee would not have been in-
jured except for his contributory negligence, they
should find for the company, "unless they further
believe from the evidence that when he came in peril
from the trains, the employes of the defendant in
charge of the train could, by the exercise of ordinary
care, have discovered his peril, and by ordinary care
have prevented his injury." The objection raised to
this instruction is that there was no evidence upon
which to base the qualifying clause relating to the
discovery of the peril in which appellee was placed.

This objection is not well taken. Looking at the instruction from the viewpoint that it was the duty of the company to give reasonably sufficient notice to warn persons not to use the passway, the instruction was proper. We have found that the ringing of the bells was not sufficient notice, and in effect that the full measure of the company's duty required that some of its employes should have been stationed at the opening to notify appellee and others not to use it. It is true that the evidence for the company shows that it did have employes stationed at suitable places to perform this duty, but on the other hand the evidence for appellee shows that it did not.

With this conflict in the evidence it was the duty of the court to submit to the jury the theory of each of the litigants, and to do this the court gave this instruction. If the company had exercised the degree of care required under the circumstances, the peril of appellee could have been discovered in time to prevent the injury, as the employes, if located where they should have been, could have warned appellee not to cross. This view of the law was expressed in Louisville Railway Company v. Hudgins, 124 Ky. 79, 98 S. W. 276, 30 Ky. Law Rep. 316, 7 L. R. A. (N. S.) 152, where it was said, in answer to a similar objection to a like instruction: "It was the duty of appellee when she started to cross the tracks to exercise ordinary care for her own safety; but, although she failed to do this, and her failure may have contributed to such an extent to bring about the injury of which she complains that it would not have happened except for her failure to exercise this degree of care, this will not relieve the appellant of liability if the persons in charge of the car that struck her could, by the exercise of ordinary care, have discovered the peril

appellee was in, and by the exercise of ordinary care
have prevented the injury to her.  It was the duty of
the motorman in charge of the car at this point and
place to keep a sharp lookout for persons alighting
from the car, and who might be expected to cross the
street immediately behind it, and to have his car
under such control as that he might stop it at a
moment's warning; and it is manifest that, if the
motorman had exercised this degree of care, he could
and should have discovered the appellee's peril in
time to have prevented injuring her.  It was there-
fore entirely proper, under the facts of this case, to
qualify the instruction as to contributory neglect as
was done.''

Did the court err in allowing the jury to award
punitive damages if they found the defendant guilty
of gross negligence?  A careful examination of the
Alabama cases introduced in evidence by appellant
fails to disclose that that court has ever considered
the question when punitive or exemplary damage
may be awarded.  The question of what constitutes
gross negligence is presented in more than one deci-
sion, but it always came up in a discussion of the
law of contributory negligence, and when the court
was indicating the character of negligence on the part
of the defendant that would authorize a recovery by
the plaintiff notwithstanding he was guilty of negli-
gence.  If the Alabama court had defined the class
of cases in which punitive damages might be allowed,
and the character of negligence that would authorize
a jury to award it, we would feel bound to follow its
ruling, although it might not conform to our decisions
on the subject, as the measure of damages recover-
able under the law of the place where the injury
occurred must control.

But, in the absence of decisions from the Alabama court, we will assume that the rule adopted in this state applies in Alabama, or would be applied if the question came up. This principle was laid down in Chesapeake & Nashville R. Co. v. Venable, 111 Ky. 41, 63 S. W. 35, 23 Ky. Law Rep. 427, where the court said: "Where a party seeks to recover or defend under a foreign law, such law must be pleaded and proved like any other fact; but, in the absence of averment and proof, the rule is that foreign states, whose system of jurisprudence is derived from the same source as our own, are presumed to be governed by the same law." To the same effect is Murray v. L. & N. R. Co., 110 S. W. 334, 33 Ky. Law Rep. 545. Conceding that the law is as we have announced, the argument is yet made that, under the law as declared and administered in this state, the evidence did not warrant exemplary damages, and the instruction submitting this issue was not only unauthorized, but defective in form. This court has repeatedly ruled that gross negligence is the absence of slight care, and that, in personal injury cases where the negligence from which the injury results is gross, punitive damages may be allowed.

Without again stating the facts, it is sufficient to say there was ample evidence that the appellant failed to exercise the slightest degree of care for the safety of appellee, and that he was injured by its reckless disregard of the duty it owed him. Nor is the instruction upon this subject open to meritorious criticism. It told the jury that they might in their discretion allow punitive damages. The argument that the words "or may not," after the words "then you may," should have been inserted is entirely too technical to be seriously considered; nor is it sustain-

ed by the opinion in Illinois Central R. Co. v. Houchins, 121 Ky. 526, 89 S. W. 530, 28 Ky. Law Rep. 499, 1 L. R. A. (N. S.) 375, 123 Am. St. Rep. 205. The addition of these words might slightly improve the verbiage of the instruction, but would make no change in its substance. Whether or not an instruction upon the subject of gross negligence or exemplary damages should be given is often a close one. Frequently, when the verdict appears to be excessive, or the evidence of gross negligence is not satisfactory, we have, as in the Houchins Case, ordered a new trial, and pointed out the impropriety of submitting this question. But when there is evidence that the injury was caused by conduct that amounted to a reckless disregard of human life, it is the settled law in this state that an instruction upon this subject is proper. Lexington R. Co. v. Fain, 80 S. W. 463, 25 Ky. Law Rep. 2243; Southern Ry. Co. v. Goddard, 121 Ky. 567, 89 S. W. 675, 28 Ky. Law Rep. 523; L. & N. R. Co. v. Mount, 125 Ky. 599, 101 S. W. 1182, 31 Ky. Law Rep. 210.

But, aside from all this, it is apparent that the jury did not award appellee more than fair compensation. At the time of his injury he was 44 years of age, a strong vigorous man of good health and industrious habits, in the prime of life and usefulness, earning by his labor and brains an annual income of as much as $2,000. But now he is virtually a physical wreck. One hand is gone; the other is useless. He cannot follow any wage-earning occupation or business in which the hand is an essential member of the body—and there are few in which it is not. So that, taking into consideration his age, physical condition, and earning capacity, it cannot be said that

the amount awarded was more than reasonable compensation for the mental and physical suffering that he has already undergone and the permanent impairment of his power to earn money.

The contention that the instructions are involved and difficult to understand is not well founded.  They presented to the jury the law of the case in simple and concise language.

Nor did the court fail in the instructions to submit appellant's defense.  It was fully set out in instruction No. 3.

A careful examination of the record and the reasons urged for reversal convince us that no substantial error was committed to the prejudice of the appellant, and the judgment of the lower court is affirmed.