## Paducah Traction Co. v. Streit, by, etc.

### (Decided February 5, 1913.)

### Appeal from McCracken Circuit Court.

1. Damages—Punitive Damages—Punitive damages in a case of personal injury are not authorized unless there is some evidence tending to show that defendant acted maliciously, wilfully or with such gross negligence as to indicate a wanton disregard of the rights of others.

2. Damages—Personal Injury—Street Railway Companies—Punitive Damages—Instruction.—In an action for damages for personal injuries caused by a street-car coming in contact with the plaintiff's wagon, evidence to the effect that the night was dark and the motorman could not see very far ahead, that just prior to the accident he was looking towards the rear, and that the car was running "pretty fast" or "at almost full speed" is not sufficient to warrant a punitive damage instruction.

WHEELER & HUGHES, for appellant.

BERRY & GRASSHAM and W. F. BRADSHAW, for appellee.

Opinion of the Court by William Rogers Clay, Commissioner.—Reversing.

Plaintiff, Robert Streit, an infant, suing by his father and next friend, Rudolph Streit, brought this action against defendant, Paducah Traction Company, to recover damages for personal injuries. The jury returned a verdict in his favor for $775. The defendant appeals.

The error of the trial court in giving a punitive damage instruction is the principal ground relied on for reversal.

About 10 o'clock on the night of October 19, 1911, Rudolph Streit and his son, Robert Streit, a boy about 15 years of age, were each driving a wagon south on Sixth street in Paducah, Kentucky. When they reached a point about a square from the intersection of Broadway and Sixth streets, a street car was coming down Broadway and turned into Sixth street. The father saw the car before it turned into Sixth street. The boy saw it before it struck him. When the father observed the car approaching, he drove his team off the car track. At that time his son's team was on the street car track, and the father directed the son to remain where he was. Each of the wagons was heavily loaded with logs. After jumping off his wagon, the father claims that he ran up the street about 40 steps and hollered five or six times to the motorman. The motorman was looking back into the car. The last time the father hollered the car struck the boy's team. The horses were injured and the wagon damaged. The boy was thrown on the double tree. The father claims that the boy was pitched under the wheel of the father's wagon. The wheel was on the boy's stomach, and they had to lift the wheel off the boy. The boy says the wagon was on his leg. The other witnesses say that the boy was pitched up against the wheel of the wagon and his clothing was under the wheel. The boy was carried to the hospital, where he remained for about five days. He was then taken home, and remained in bed two or three weeks. The boy says that he suffered from the injury for about three weeks. Some time thereafter he had trouble in straightening his back. He had some abrasions on his stomach and some slight bruises near the hip. When first taken to the hospital his temperature was one-fifth above normal. It afterwards became normal. The nurses say that he

had a good appetite while in the hospital, and they could see no evidence of any severe injury.

B. A. Merritt, a witness for the plaintiff testified that he was on the car that struck the wagon, but got off just before the accident. He heard a man holler. When the man hollered a second time he jumped off the car. The car hit the wagon and stopped. The car was running pretty fast—very near full speed. The car ran about its own length after striking the wagon.

J. O. Keebler, a witness for the plaintiff, says that he heard a man holler, and that the collision took place about five or six or maybe ten seconds thereafter.

Mr. Keith, a witness for defendant, says that he heard a man holler. He braced himself on the back end, and about that time they bumped something. The motorman tried to stop—fixed the brakes.

Peake, the motorman, says he heard a man holler. He then reversed the car, as he supposed some passenger wanted to get on. His car was moving about five miles an hour, and the night was quite dark. He was not looking back into the car when the man hollered. The light on the car did not extend more than ten feet.

Plaintiff contends that as the night was dark and the motorman could not see far ahead, and there was evidence tending to show that the car was going "pretty fast" or "at almost full speed," and the motorman was looking back into the car, the evidence fully justified the giving of a punitive damage instruction. In this connection he relies on the cases of South Covington Railroad Co. v. McHugh, 77 S. W. 202, 25 Ky. L. Rep., 1112, and Louisville Railway Co. v. Teekin, 78 S. W. 470, 25 Ky. L. Rep. 1692.

In the first case cited the railway track was upon and near the margin of a much travelled public highway and within the limits of an incorporated town. The grade of the track was downward at that point. A carriage was approaching from a gate opening from a drive-way flanked by trees and bushes and foliage. Plaintiff's evidence was that the car was being run at a speed of 20 miles an hour. The gong was not rung, nor was there any other signal of its approach. The court held under these circumstances that punitive damages were authorized.

In the second case cited, plaintiff was driving a delivery wagon over one of the streets of Louisville about

eight o'clock at night. The street was so narrow that the railway company's track took up the most of it. Plaintiff's wagon was being driven on one of the tracks, when being warned by a car coming up in his rear, he crossed to the other track, because of a lack of sufficient room between the first track and the curbing. While on the second track another car coming in the opposite direction struck his wagon. This car was being run at from 12 to 20 miles an hour. It failed to sound its gong at the street crossing near which the accident occurred, and the motorman was looking back and not ahead. It was held that a punitive damage instruction was properly given.

The case under consideration presents a different state of facts. There was nothing to obscure the view of the approaching car. There was no evidence tending to show that it failed to sound the gong and give other signals of its approach. Indeed, plaintiff's father saw the car even before it turned into Sixth street. Plaintiff himself saw it after it reached Sixth street. The evidence that the car was going at an excessive rate of speed is not satisfactory. The expression "pretty fast" is relative. One witness may think six miles an hour "pretty fast;" another, eight; another, ten. The expression "almost full speed" is likewise indefinite. Full speed may mean either the highest speed the car could make or the highest speed at which a car is usually driven. One witness might think eight miles was "almost full speed," while another might conclude that ten miles was "almost full speed." But one witness attempts to fix the speed of the car, and he fixes it at five miles an hour. In view of the unsatisfactory evidence as to the speed of the car, we cannot say that because the night was dark and the motorman happened to turn his head and look into the car, his conduct under these circumstances constituted gross negligence. We have frequently held that punitive damages are not authorized, and should never be allowed, in any case where there is not some evidence tending to show that defendant acted maliciously or wilfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. Koestel v. Cunningham, 97 Ky., 421; McHenry Coal Co. v. Sneddon, 98 Ky., 686; Southern Railway Co. v. Goddard, 121 Ky., 578; L. & N. R. R. Co. v. Mount., 125 Ky., 593; National Casket Co. v. Power, 137 Ky., 156.

Or, as stated in the case of L. & N. R. R. Co. v. Wilkins, Guardian, 143 Ky. 572, "punitive damages are recoverable only where the defendant has acted wantonly or recklessly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations."

The facts of this case do not bring it within the rule announced. As plaintiff was but slightly injured, it would be mere conjecture on our part, as well as a manifest invasion of the province of the jury, to say that the jury would have awarded him the same sum in damages even if a punitive damage instruction had not been given. Henderson City Ry. v. Lockett, 30 Ky. L. Rep., 321; Covington Saw Mill & Mfg. Co. v. Drexilius, 27 Ky. L. Rep., 903.

Judgment reversed and cause remanded for new trial consistent with this opinion.