### East Tennessee Telephone Company v. Jeffries.

(Decided October 23, 1914.)

### Appeal from Fayette Circuit Court.

1. Verdict—Witnesses—Province of an Appellate Court.—It is not the province of an appellate court to declare what witness, or number of witnesses, should be believed by a jury, or in whose favor evidence, as a whole, preponderates; nor does the fact that a jury accepted the testimony of two witnesses, or even one, against that of a greater number of opposing witnesses, justify an appellate court in setting aside the verdict on the ground of its being flagrantly against the evidence.

2.  Verdict—New Trial.—It is only when the verdict is glaringly excessive, and it appears at first blush to have resulted from passion or prejudice, that a new trial will be granted upon the ground that the finding of the jury was excessive.

GEORGE C. WEBB for appellant.

MAURY KEMPER and FALCONER & FALCONER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellee Jeffries sued the appellant for personal injuries received by the breaking of a step-ladder which he was using while in the service of the appellant, and recovered a judgment for $8,500.00. Upon appeal that judgment was reversed for errors in the instructions. The opinion of this court upon the first appeal states the facts of the case in detail, and may be found in 153 Ky., 133, and 154 Ky., 257. That opinion set forth a complete set of instructions to be given upon the next trial. The instructions were given as directed, and upon the second trial the appellee obtained a verdict and judgment for $10,500.00, and from that judgment this appeal is prosecuted.

Two grounds are relied upon for a reversal; (1) that the verdict is flagrantly against the evidence; and (2) that it is excessive.

1.   It is unnecessary to repeat the facts which were so well and fully stated in the former opinion; we will only supplement that opinion by discussing the two grounds now relied upon for a reversal, which were not considered upon the first appeal.

This controversy is principally over the identity of the ladder which Jeffries was using at the time of his injury. He says it was a dirty, yellow ladder, with tin braces at the top; that it had been on the wagon for some time; that the paint, or whatever there was on it, had washed off so that one could hardly tell the color of it; that it was made of pine, and the first step was about eighteen inches from the floor. He insists that he never saw the· ladder, or used it, before September 3, 1909, the day he was injured, although he had been out working, installing and taking out telephones, since August 1st of that year. The ladder was produced upon the first trial and used throughout by both sides. It was left in the court house upon the completion of the first trial, and, so far as this record shows, it has not since been seen. Ap-

pellant and its counsel made earnest efforts to find it, but wholly failed.

Appellant insists that the ladder produced and used at the first trial, which was a strong, home-made ladder, of oak upright pieces and ash foot rests, with wrought-iron clasps across the sides near the top, was the ladder that Jeffries used, and that it was not broken, or even injured.

Jeffries was alone at the time of the accident, but he succeeded in crawling to his wagon and drove home, leaving the ladder where it had fallen. The company sent Frank Smith, its "trouble man," to get the ladder. He found it lying back against the fence or house on the adjoining lot to the one where Jeffries had used it. He says the condition of the ladder was the same as it had always been; that there was no change in the iron hinges; that they had not been broken, and, in fact, he saw nothing wrong with the ladder. He put the ladder upon his wagon and drove the wagon to the appellant's supply room, where he left it without unloading it from the wagon, and did not see the ladder again until he saw it on the third story over the Fayette National Bank, which was used by the appellant. He next saw the ladder upon the occasion of the first trial, and says there had been no change in it from the time he brought it in from the place where Jeffries had left it. He says the ladder was made by Spalding, who had charge of appellant's supply rooms; and that when he brought it in from the place of the accident, he left the wagon and the ladder in the supply room in charge of Spalding. Spalding did not testify upon either trial.

The testimony of Smith that the oak ladder used upon the first trial was the ladder that Jeffries was using at the time of his injuries, is corroborated by Sullivan, Lake and Stinson. Furthermore, Stinson testifies as follows:

"Q. You were employed by the East Tennessee Telephone Company at the time Frank Jeffries received the injury from the ladder? A. Yes, sir. Q. Did you know the ladder he had? A. Yes, sir. Q. I will ask you if you knew the condition of that ladder before he got hurt? A. Yes, sir. Q. I will ask you if you made any statement to Mr. Lake on the morning that he was hurt as to the condition of the ladder? (Question objected to and not answered). Q. Did you tell Mr. Lake about that lad-

der on the morning before the time he got hurt? A. Yes, sir; I told Mr. Lake as he was going up-stairs and I was going down-stairs, I said, 'Mr. Lake, our ladder is defective and when are you going to get us a new one?' And when he made no answer and went on up-stairs, I went down and got on the wagon. Q. When was that? A. That was in the morning about eleven o'clock. Q. What position did Mr. Lake hold with the company? A. He was assistant manager. Q. Did you get your orders from him? A. Yes, sir."

It is contended that Jeffries stands uncorroborated in his statement that the oak ladder produced by the company upon the first trial was not the ladder used by him when he was injured. This contention, however, overlooks the testimony of Charles True, who was working for appellant as a "ground man" under Jeffries at the time of the accident, but for the Lexington Railway. Company at the time of the trial.

True testified as follows:

"Q. You knew the ladder on that wagon? A. Yes, sir. Q. Were you a witness on the last trial of this case? A. Yes, sir. Q. Did you see the ladder exhibited by the telephone company on that trial? A. Yes, sir. Q. Examine that ladder carefully? A. Yes, sir. Q. I will ask you whether that ladder they exhibited on that trial was the same ladder as they had on that installer's wagon? A. It was not. Q. Tell how it was different? A. This ladder they had was a straight ladder all the way up, and this other ladder was wide at the bottom and narrow as you go up. Q. What other defect? A. The first step was off. Q. On which ladder? A. The one he got hurt on. Q. Tell how this ladder was that they had here? A. Had a step at the bottom and the same width ladder all the way to the top. Q. What kind of a looking ladder was it they had on the installer's wagon? A. A yellow looking ladder; I don't know what kind of wood. Q. State the condition of it? A. The last time I saw it, it was no good at the top; it was not safe for a man to stand on. Q. You say that the ladder that they exhibited to the jury here was not the ladder that was on the wagon? A. No, sir."

Upon the question then as to which ladder had been furnished to Jeffries by the appellant, whether it was the old, broken pine ladder with tin braces, or the oak ladder with wrought iron braces across the top, we have the testimony of two witnesses on one side, and three on

the other, while one of the three says the ladder used was defective, and that he spoke to Lake, the assistant manager, about it, on the morning of the accident.

Under this evidence it was for the jury to determine the issue. We have often said it is no ground for a reversal that a jury believed the fewer witnesses upon an issue, rather than the many.

In L. & N. R. R. Co. v. Eckman, 137 Ky., 335, we said:

"It is not the province of this court to declare what witnesses, or number of witnesses, should have been believed by the jury, or in whose favor the evidence as a whole preponderates, nor would the fact that a jury accepts the testimony of two witnesses, or even one, as against that of a greater number of opposing witnesses, justify this court in setting aside the verdict on the ground of its being flagrantly against the evidence. Our duty goes no further than to determine whether there was evidence to support the verdict, and our decision of that question is not to be controlled by our opinion as to whether the verdict is in accordance with or against the weight of the evidence."

The jury being the judges of the credibility of the witnesses, and there being testimony to sustain either side of an issue, it is the peculiar province of the jury to say to which of the witnesses it will give the greater faith. This is elementary law, and has been sustained by many decisions of this court. Myers v. Dunn, 126 Ky., 553; L. & N. R. R. Co. v. Daniels, 131 Ky., 689; Louisville Water Co. v. Phillips' Admr., 139 Ky., 619; Southern Railway Co. v. Alford's Admr., 150 Ky., 810; L. & N. R. R. Co. v. Woodford, 152 Ky., 401; Postal Telegraph Cable Co. v. Thornton, 153 Ky., 178; Jones v. American Car & Foundry Co., 153 Ky., 746.

2. Neither are we prepared to say that the verdict is excessive.

In L. & N. R. R. Co. v. Mitchell, 87 Ky., 337, we spoke upon this subject as follows:

"The amount allowed seems to be large. It is so. The fact, however, that it appears high to us does not authorize a reversal. We are not acting as a jury, and it is only when it is glaringly excessive, and it appears at first blush to have resulted from passion or prejudice, that we can interfere. The power should be sparingly exercised, and only in extreme cases. This is the policy of the law, and reasonably and necessarily so."

This rule is peculiarly applicable to verdicts for personal injuries, where the extent of the injury is difficult of ascertainment, and enters so largely into the future life and earning capacity of the individual.

In this case Jeffries lost his leg and suffered greatly, to say nothing of his expenses. Two juries have passed upon his case. Under these circumstances we do not feel justified in pronouncing the verdict excessive.

We have affirmed verdicts in the following cases as not being excessive: L. & N. R. R. Co. v. Moore, 83 Ky., 675, where a brakeman recovered a verdict for $9,000.00 for the loss of a leg; South Covington Street R. R. Co. v. Weber, 26 Ky. L. R., 922, 82 S. W., 986, a verdict for $10,000.00 for the loss of a child's hand; L. & N. R. R. Co. v. Smith, 122 S. W., 806, a verdict for $12,500.00 where a man forty-four years old lost one hand, and was otherwise crushed; Price & Lucas C. & V. Co. v. Haley, 125 S. W., 720, a verdict for $9,000.00 in favor of a man fifty-seven years old for the loss of an arm; and C. & O. Ry. Co. v. Davis, 22 Ky. L. R., 748, 58 S. W., 698, where a boy nine years old recovered $10,000.00 for the loss of a foot.

See the cases from other jurisdictions collected in Ann. Cas. 913-a, 1361.

Judgment affirmed.