## Norfolk & Western Railway Company v. Thompson.

(Decided December 18, 1914.)

### Appeal from Boyd Circuit Court.

1. Railroads—Rule Prohibiting Employes Riding on Pilot—Use of Pilot as Temporary Step.—The use of a pilot as a temporary step in mounting an engine is not a violation of a rule prohibiting employes from riding on the pilot of an engine.

2. Railroads—Rules—Violation.—A rear brakeman who is left by his own train, and is required by the company's rules to catch the

next train and attempt to overtake his train, does not violate a rule requiring the rear brakeman to see that the train approaching in the rear of his train is stopped, by attempting to mount the approaching train while in motion.

3. Railroads—Rules—Instruction.—Where plaintiff, an employe, in attempting to mount an engine, slipped from a step attached to the pilot beam and was injured, an instruction telling the jury to find for defendant if they believed plaintiff used the step in violation of a rule prohibiting employes from riding on the pilot was properly refused, since such rule did not apply to the use of the pilot as a temporary step in mounting the engine.

4. Instructions—Refusal—Question Covered by Other Instruction.—Held not error to refuse an offered instruction on a phase of the case covered by another instruction.

5. Master and Servant—Injury to Servant—Railroads—Assumed Risk—Instruction.—Where plaintiff, an employe, in attempting to mount an engine, slipped from a step attached to the pilot beam and was injured, and there was evidence that the step was defective, and no evidence that plaintiff knew of this defective condition or that it was plainly observable, held that he did not as a matter of law know and appreciate the danger and therefore assume the risk of injury.

6. Verdict—Not Excessive.—A verdict of $10,000 held not excessive where plaintiff, a brakeman 28 years of age, fell under a train and his leg was so badly injured as to require amputation eight inches from his body.

7. Master and Servant—Injury to Servant—Contributory Negligence—Federal Employers' Liability Act—Damages.—In an action for damages for personal injuries under the Federal Employers' Liability Act, even if it be admitted that plaintiff was guilty of contributory negligence, it was for the jury to compare his negligence with that of the defendant, and after ascertaining the full amount of the damages, to award plaintiff such proportional part thereof as the negligence attributable to the defendant bore to the entire negligence attributable to both.

8. Evidence—Railroads—Customary Violation of Rule—Where plaintiff was injured by slipping from a step on the pilot beam in attempting to mount a moving engine, it was competent to prove a customary violation of the rule for the purpose of counteracting the effect of defendant's evidence that the step was designed for use by shopmen only, and was not intended for use by trainmen.

J. R. JOHNSON, JR., and HOLT, DUNCAN & HOLT for appellant.

PROCTOR K. MALIN and M. S. BURNS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries against the defendant, Norfolk & Western Railway Company, plaintiff, F. S. Thompson, recovered a verdict and judgment for $10,000. The railway company appeals.

At the time of the accident defendant was engaged and plaintiff was employed in interstate commerce, and the action is based on the Federal Employers' Liability Act.

According to the evidence for plaintiff, the accident occurred under the following circumstances: Plaintiff, who was about 28 years of age, had been employed by defendant as a freight brakeman for about 18 months, in running between Bluefield and Williamson, West Virginia. The accident occurred on September 11, 1911. On the night previous to the accident plaintiff left Vivian on train extra 1090 west, and was performing the duties of rear brakeman. When the train reached Grapevine, 12 miles east of Williamson, and stopped there, plaintiff, as required by the rules of the company, went back east for the purpose of flagging first 85, another freight train which was due about that time. While so engaged his train (extra 1090) pulled out and left him. Under these circumstances, it was his duty, under the rules of the company, to take the next train and ride it until his train was overtaken. When first 85 came along, he flagged it, and boarding the engine at the gangway, rode thereon to the east Williamson yard, as far as the telephone box, where the train stopped for the purpose of permitting the head brakeman to telephone to the yard office and procure a track on which to put away his train. This occurred some time between eight and nine o'clock a. m. The point at which the train stopped is about a mile and a half or two miles from the station at Williamson. When the Williamson yards were reached, plaintiff saw his own train standing on the track about 250 or 300 yards ahead of first 85. Under these circumstances he claims that it was his duty to attempt to overtake his own train. With that end in view he announced to the engineer that he was going to try to catch his own train, and left the engine and proceeded along the track. Before reaching his train it pulled out, and he could not overtake it. Not being able to overtake his own train at that point, it was his duty to return to first 85, and ride that engine until his train was overtaken. It was customary to ride the engine in

order to be in a position promptly to reach the preceding train. When he returned to board first 85 it had started up. As the train approached him he gave the engineer, who was looking at him, the steady signal, and stepped to the left-hand side of the track for the purpose of mounting the engine as it passed him. When the engine reached him he undertook to board it at the step just back of the pilot beam. There is a step of this kind on each side of the engine. It consists of a piece of iron about five or six inches wide which hangs down from the rear of the pilot. From the bottom it turns out at right angles. On the pilot beam is a flag staff which is used as a hand hold in mounting the engine on this step. After catching hold of the flag staff, plaintiff made several attempts, first with one foot and then with the other, to get on the step. Each time his foot would slip off. Finally his right foot slipped off the step and went under the trucks of the engine. His leg was so mangled and crushed that amputation was necessary. After the operation only about eight inches of his right leg remained attached to his body. The step which he attempted to mount, and which should have stood at right angles, was bent down to an angle of about 45 degrees. The bottom of the step should have been "notched" or "scalloped" to prevent one's foot from slipping, but instead it was worn smooth. The bent and smooth condition of the step caused his foot to slip off. It further appears from plaintiff's evidence that there are three sets of steps on an engine, those in the rear of the pilot, those in the gangway, and those in the rear of the tender. It was customary for the trainmen to use the steps in the rear of the pilot for the purpose of getting on the engine. In mounting the engine at that point plaintiff did not intend to ride on the pilot, but his purpose was to step on the pilot and then proceed along the running board until the cab of the engine was reached, a custom which he and his witnesses claim was frequently followed by brakemen. While admitting that he had no duties to perform on the engine which he mounted, and it was proper for the engineer to take his signals from the head brakeman, who had gone forward to secure a track for the train, plaintiff says that as the rules required him to ride on train 85 until his own train was overtaken, and as he was unable to reach his train at the point where train 85 stopped, it was his duty to again flag train 85 and ride thereon until his own train

was overtaken. For that reason it was the duty of the engineer of train 85 to heed his signal to stop the train.

The defendant introduced in evidence rule No. 32, providing as follows:

"Employes are prohibited from riding on pilots of engines in road service, and they must not under any circumstances ride on engine foot boards between engine and cars."

Defendant also introduced evidence to the effect that the step by which plaintiff attempted to mount the engine was designed and placed on the engine for the use of shop employes for the purpose of cleaning and repairing the engine while stationary, and was not for use by employes while the engine was in road service in motion. The reason for this restricted use was that all the machinery and the boiler, for its entire length, were between that step and the cab, and it was therefore extremely dangerous to get on the engine in that way. It was much safer to get on the engine through the gangway. The engineer on train first 85 testifies that head-brakeman Fox went forward to secure a track for the train. After securing the track, Fox signaled him to proceed. Both Fox and plaintiff gave him the signal to go ahead. It was his duty to take his signals from Fox. Plaintiff never told him that he was going to get off and overtake his train. Did not remember of seeing plaintiff get off at all. Witness admitted that brakemen very frequently mounted the engine at the step at the pilot beam. Defendant also introduced in evidence rule 99, requiring the rear and head brakemen to protect their trains when stopped or delayed under such circumstances that they might be overtaken by another train. Rule 99a on the same subject was also introduced, and provides in part as follows:

"When a train is within sight or hearing, the flagman must remain until such train has been stopped, and will then proceed thereon until his train is overtaken."

The conductor of train 1090 testified that his train reached the telephone box in the Williamson yards at 7:25 a. m. He remained there about three minutes before a track was assigned. He put the train in on the assigned track, cut the engine loose and registered off himself and crew, including plaintiff, at 7:50 a. m. There was further evidence to the effect that the pilot step was in good condition and met all the requirements of

the Interstate Commerce Commission, and was in common use upon engines of the style in question.

In instruction No. 1 the court told the jury that plaintiff was employed and defendant was engaged in interstate commerce, and that the action was controlled by the Federal Employers' Liability Act. Instructions Nos. 2 and 3 are as follows:

"2. The court instructs the jury that if they find and believe from the evidence that the plaintiff, F. S. Thompson, was, at the time of his injury, at a place where his duties as an employee of the defendant required him to be, and engaged in the performance of such duties when and at the time he attempted to mount the engine and if the jury shall further find and believe from the evidence that the defendant negligently suffered or permitted the step upon said engine to be defective, or bent, or insufficient, or out of repair, and that the defendant knew, or by the exercise of ordinary care upon its part could have known of said step being defective, or insufficient, or bent, or out of repair, if such existed in time to have avoided the injury to plaintiff, by the exercise of ordinary care upon its part, and that as a direct and proximate result of such negligence of the defendant in the particulars hereinabove set forth, if any there was, the plaintiff while in the discharge of his duties as brakeman, on the occasion in question received the injuries complained of, then the law is for the plaintiff and the jury will so find and fix his damages as indicated in instruction No. 7.

"And the court further instructs the jury that if they believe and find from the evidence that the plaintiff, Thompson, was at the time he received the injuries complained of, at a place where his duties as an employe of the defendant required him to be, and was engaged in the performance of such duties, and shall further believe and find from the evidence that at the time that he attempted to board the engine in question that the engineer thereon knew that said plaintiff was about to board said train, and with such knowledge, carelessly, or recklessly, or negligently operated said train, and that as a direct and proximate result of such negligence of the defendant in this particular, if any there was, the plaintiff, while in the discharge of his duties as brakeman, on the occasion in question, received the injuries complained of, then the law is for the plaintiff and the

jury should so find and fix his damages as indicated in Instruction No. 7.

"3. The court instructs the jury that if they find from the evidence in the case that the plaintiff, F. S. Thompson, on the occasion in question, when the train on which he came from Grapevine, arrived at or near to the yards of defendant at Williamson and stopped at the east end of said yards at the telephone station to phone for orders for track to switch train on, did not then see his own train (No. 1090) and believe and have reasonable grounds to believe that he could catch his said train and under such circumstances left the train on which he was riding in an effort to get on his train, 1090, but without necessity and out of the line of his employment left the engine of train 85 and was injured in an effort to return to said engine, then in that event they must find a verdict for defendant.

"The phrase 'Reasonable grounds to believe,' as used in this instruction are such grounds as would induce one of ordinary prudence to believe it under the circumstances."

Instruction No. 4 covers the question of contributory negligence, and the measure of damages applicable to that state of case.

In instruction No. 5, the court told the jury that the defendant company was not an insurer of the safety of its employes, but was bound only to exercise ordinary care to provide for them a reasonably safe place for them to work, taking into consideration the surrounding circumstances and conditions, and the nature and character of the work to be performed, and that they should find for the defendant unless they believed from the evidence that the accident to plaintiff was the direct and proximate result of the negligence of defendant as set forth in instruction No. 2.

Instruction No. 6 covers the plea of assumed risk, and instruction No. 7 presents the measure of damages.

(1) The contention is made that plaintiff's injuries were caused solely by his own negligence in disregarding the rules of the company. It is first insisted that he violated rule 32, prohibiting employes from riding on the pilots of engines in road service. In support of this proposition it is argued that the engine of train 85 was in the road service, and it is conclusively shown by the evidence that in order to mount the engine by means of the stirrup in the rear of the pilot, it was absolutely

necessary to step on the pilot, and therefore to ride on the pilot in violation of the above rule. We are not, however, disposed to give the rule such a broad and comprehensive meaning. The rule is evidently intended to guard against the actual use of the pilot for the purpose of riding thereon. It was not, we think, intended to cover the case of the use of the pilot for a mere temporary step in passing from one part of the engine to another, though the person whose foot was placed on the pilot might for that instant be riding thereon. On the sides of many freight cars there are ladders used by trainmen in mounting the cars. Suppose the company promulgated a rule prohibiting trainmen from riding on these ladders, would it be contended that a person using a ladder for the purpose of mounting a car would violate that rule? We think not, and for the same reason conclude that the act of plaintiff in stepping on the pilot was not a violation of rule 32. But it is further insisted that plaintiff violated rule 99a, above quoted, because he did not wait until the engine of train 85 stopped before attempting to board it. It is reasonably clear, we think, that rule 99a did not control plaintiff's conduct at the time of the accident. The purpose of that rule, as we understand it, was to require the rear brakeman to see that the train approaching in the rear of his own train was stopped, not for the purpose of enabling him to mount the train, but to protect his train in front. In the case under consideration plaintiff was not engaged in flagging train 85. He was merely performing his duty by attempting to overtake his own train.

(2) Another error relied on is the refusal of the trial court to give the following instruction:

"The court instructs the jury that, if they believe and find from the evidence that the step attached to the pilot beam of the engine in question, and in front of the cylinder head, was placed there for the sole use of shopmen and others working upon the front part of the engine while not in motion, not stationary, and that trainmen were forbidden by the rules of the defendant to use the same while the engine was in road service and in motion, and that the plaintiff was familiar with such rule at the time of his injury, but, in violation of the same, undertook, by means of said step, to board said engine while in road service and running, and was injured by his foot slipping from said step and under

the wheels of said engine, then, and in that event, the plaintiff cannot recover, and their verdict should be for the defendant.''

It will be observed that this instruction is predicated on defendant's construction of rule 32, that it prohibited the mere stepping on the pilot for the purpose of mounting the engine. Being of the opinion that the rule does not bear this construction, it follows that the offered instruction was properly refused.

(3) The failure to give the following instruction is also assigned as error:

''The court instructs the jury that, if they find and believe from the evidence in this case that C. M. McQueen, the conductor of train No. 1090, had, after the plaintiff was left at Grapevine and picked up by train No. 85, performed for the plaintiff his duties upon train No. 1090, and had, before the injury to the plaintiff, put said train No. 1090 away, and had taken its engine to the round-house or spark track, and registered himself and train crew off, including the plaintiff, and that the plaintiff, at the time of his injury, had no duties to perform, either upon train 1090 or train 85, then, and in that event, the plaintiff, while attempting to board the engine attached to train No. 85, was out of the line of his employment, and cannot recover.''

This instruction presents for the consideration of the jury certain facts which, if true, would show that plaintiff did not mount the engine for the purpose of overtaking his own train, but did so at a time when he had no duties to perform, and was out of the line of his employment. This phase of the case, we think, is fully covered by instruction No. 3, wherein the jury was told in substance that if upon the arrival of train 85 plaintiff did not then see his own train and believe and have reasonable grounds to believe he could catch his train, but left train 85 without necessity therefor, and out of the line of his employment, they should find for the defendant.

(4) The court gave an instruction on assumed risk which is not criticized by defendant. It is insisted, however, that the jury wholly disregarded this instruction, and that the facts make out a case where plaintiff should be held as a matter of law to have assumed the risk. It must be remembered, however, that there is evidence tending to show that the step was defective.

There is no evidence from which it could be inferred that plaintiff knew of this defective condition, or that it was plainly observable. Under these circumstances, of course, it cannot be said that he assumed the risk of injury from the defective step. It being doubtful whether his injuries were caused by the defective step, or by his effort to mount the engine while in motion, and the facts not being such that all reasonable men must draw the same conclusion from them, but presenting a question about which reasonable men may fairly differ, we cannot say as a matter of law that plaintiff knew and appreciated the danger, and therefore assumed the risk of injury.

(5) It is next insisted that the verdict is excessive. This contention is based on the assumption that plaintiff was guilty of contributory negligence, and that the jury failed altogether to take into consideration such negligence in fixing the amount of the verdict. The evidence shows that plaintiff was only 28 years of age, and therefore had a long expectancy of life. His leg was so badly crushed that amputation became necessary. The physical and mental suffering growing out of his injuries were not only intense, but lasted for a long time. His leg having been amputated near the hip, his power to earn money has been largely impaired. Even if it be admitted that plaintiff was guilty of contributory negligence, still it was peculiarly within the province of the jury to compare his negligence with that of the defendant, and after ascertaining the full amount of the damages, to award plaintiff such proportional part thereof as the negligence attributable to the defendant bore to the entire negligence attributable to both. N. & W. R. Co. v. Earnest, 229 U. S., 114, 57 L. Ed., 1096. Larger verdicts have been sustained by the courts, and taking into consideration the serious character of plaintiff's injury, the consequent impairment of his earning capacity, and the suffering, both physical and mental, which he necessarily endured, we are not prepared to say that the verdict is excessive.

(6) Lastly it is insisted that the trial court erred in admitting evidence of the customary violation of rule 32, without showing knowledge of such violation on the part of defendant's officers superior in authority to plaintiff. The evidence complained of was to the effect that it had long been the custom of trainmen to use the stirrup in the rear of the pilot for the purpose of mount-

ing the engine. This evidence was not introduced for the purpose of showing a customary violation of rule 32, for, as we have before said, that rule did not pro- hibit trainmen from stepping on the pilot for the pur- pose of mounting the engine. The evidence referred to was clearly admissible to counteract the effect of de- fendant's evidence that the step in question was de- signed for use by shopmen only, and was not intended to be used by trainmen.

Judgment affirmed.