## McGraw et al. v. Ayers.

(Decided March 14, 1933.)

R. W. KEENON and CHARLES FRANKLIN for appellant.

HUBBARD & HUBBARD, S. Y. TRIMBLE and SAMUEL M. ROSENSTEIN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal presents for review a verdict of the jury for $10,500 in favor of the plaintiff for a personal injury he sustained in the collision of a bus, in which he was riding as a passenger, with an automobile traveling on the highway from the opposite direction. U. B. McGraw, against whom the judgment was rendered, by his trustee in bankruptcy, prosecutes the appeal.

On the 9th day of April, 1927, Ayers, a traveling salesman, boarded a bus owned and operated by U. B. McGraw from Nortonville, Ky., to Hopkinsville, Ky. A short distance from the village of Crofton, Ky., the bus and the car, driven by Mrs. Marquess, collided, and, in the language of McGraw, it was "just as square as you can hit." The weight of the bus without passengers was 6,300 pounds; with passengers, about 10,-000 pounds. At the time of the accident it was occupied by 15 or 18 passengers. The car in which Mrs. Marquess was traveling was a Chevrolet. It was occu-

pied by her and her daughter. At the point of the accident the road from shoulder to shoulder was 24 feet wide. The bus passed a wagon 300 or 400 yards before it reached the point where the accident happened. Three other wagons were on the highway, traveling on the same side of the highway, and going in the same direction of the first wagon. The wagon of Arthur Jones was in front, Jim Bennett next, 100 yards behind, Walter Thompson in his rear, and Arnold Thompson was driving the hindmost, or fourth, wagon, on the extreme right of the highway. On the wagon of Arnold Thompson was "a 16 foot all purpose frame"; those on the other wagons were 10 feet wide. Mrs. Marquess pulled up behind the wagon Arnold Thompson was driving, like she was going to stop, then pulled around. The collision occurred opposite the wagon of Arnold Thompson. McGraw described the accident thus:

"When I passed Crofton Lake, I passed the wagon just about the lake; then about 400 or 500 yards from there I passed another one; when I got up * * * about 100 yards this side of that cabin, I met two more wagons, I reckon they were about 50 or more feet apart; I was passing one, and as I got nearly opposite the first wagon, or the middle of these two last ones, this car ran from behind that wagon; I stuck my foot on the brakes to stop."

He was asked and answered in this language:

"Q. About how far were you from the car, when she came from behind the wagon? A. I judge about 50 or 60 feet maybe, I didn't notice particularly.

"Q. When the collision occurred how fast was your bus traveling? A. I was standing still.

"Q. How fast had you been going? A. Twenty or twenty-five miles.

"Q. You were fifty or sixty feet from her when she came around the wagon, how far did you travel after you saw her, before you stopped? A. It looked like about the length of the bus, the way the wheels skidded.

"Q. How long is the bus? A. Twenty feet."

Mr. Bryant, a passenger on the bus, was asked and answered these questions:

"Q. When you all climbed out of the bus on the right side, how close did you have to step to the ditch? A. We stepped on the bank of the ditch. The wagons had big frames on them, they were occupying at least one-half the road.

"Q. About how fast was the bus travelling at the time you saw the car coming from behind the wagon? A. 15 or 20 miles.

"Q. What was done toward stopping the car? A. I stopped it, I slapped my foot on McGraw's.

"Q. Did he put his foot on the brake? A. Yes sir, and I put my foot on his.

"Q. What effect did that have? A. It stopped the bus, about 1,000 pounds weight was on it."

This witness claims that at that time he weighed 320 pounds, and thus explains his statement of the weight on the brake at the time he stopped the bus. A majority of the witnesses claim that immediately before and at the time of the collision the bus was on the right side of the road, as close to the edge as possible. The testimony of the witnesses in behalf of McGraw exonerated him of all negligence in the operation of the bus, except that portion of the testimony of W. S. Bryant, wherein he claims that he stopped the bus. The road where the accident happened was level for a considerable distance before reaching the point of the accident. Witnesses for Ayers claim that the bus was on the left side or beyond the center of the road. Ayers claims that, on the appearance of the automobile of Mrs. Marquess, McGraw made no effort to stop his machine; that he got up and asked him to stop it, taking hold of the back side of the door and remarked to McGraw, "For God's sake apply the brakes," and that at that time Bryant applied the brakes. He says McGraw seemed confused, and, instead of trying to stop, he got a little more speed, when Bryant helped him, and that the bus was on the left side, or beyond the center of the road. Bryant was making an effort to stop it, and, as the bus struck the automobile, "it seemed to knock it sideways," that he was thrown immediately from the bus, "striking the ground as the crash occurred," and drag-

ged, holding to "possibly the door," but was finally forced to turn it loose; that at the time the bus stopped it was "crosswise" the road. Mrs. Marquess explains her part in the transaction in these words:

> "There were three wagons on the road. One was some distance ahead of the other two, and as they were away over on the right hand side of the road, I was going by the wagons and when I got even with the first one I saw the bus approaching, there was nothing for me to do but to put on my brakes, and I did."

She says that the bus made no attempt to stop, and was traveling near the middle of the road, and that she was over near the wagons, as close as she could get to them without rubbing them. The wagons were over on the right side of the road as far as they could get; that McGraw was nearer her right-hand side than he was his right-hand side, when the machines struck. She claims that she had roadway in which to pass between the wagon and the bus except for the bus being turned into the middle of the road. The impact knocked her completely off the road to the left. Witnesses for Ayers who were traveling on the highway in an automobile immediately near the point where the accident occurred claim that when they arrived at the scene of the accident, the bus was in such position on the highway that a vehicle could not pass it on either side until it was removed, and it was removed to permit the passage of their own and other vehicles.

Without an elaborate detail of the evidence, the foregoing resume is sufficient to show a direct, positive conflict of the testimony in behalf of the parties, requiring the submission of the issues to the jury. Duff v. May, 245 Ky. 709, 54 S. W. (2d) 4. We are not authorized to interfere with the verdict on such conflicting evidence because of the preponderance of the evidence, unless the record indicates the jury was prevented from properly considering the case. Johnson v. Taylor, 245 Ky. 247, 53 S. W. (2d) 550, and cases cited.

On the cross-examination of a witness in behalf of McGraw, he was asked and answered:

> "Q. How fast was that bus going at the time it turned over? A. About 15 miles.

"Q. Did it go over 15? A. No sir.

"Q. That is as fast as McGraw drives? A. Yes sir."

McGraw's trustee objected to the last question. His objection was overruled. He saved an exception. The same witness was asked this question:

"Q. Did you see his bus come through there every day? A. Every day it was not torn up and had had a wreck."

The objection to this question and answer was sustained. A witness for McGraw was asked:

"Did you ever see him drive that slowly before?" The answer was objected to. The objection was sustained and the question was not answered. This question was propounded on cross-examination of a witness:

"Q. Did this man get out of the car before the collision or was he knocked out at the time of the collision?"

It was objected to, the objection sustained, and the question was not answered. It is argued by McGraw's trustee that the propounding of these questions to the witnesses, when considered in connection with the argument of the attorney for Ayers, was very prejudicial, although his objections thereto were sustained.

The argument of counsel of which complaint is made is in this language:

"McGraw did not say his bus was in good shape and his brakes were good, and his brakes must have been bad or they would have stopped the bus sooner. To the making of said statement the defendant at the time objected and moved the court to admonish the jury not to consider the same, for the reason that there was no evidence or pleading to justify the remark. Which motion the court overruled. To which ruling of the court defendant at the time objected and excepted and still objects and excepts. And again during the argument to the jury said Trimble used the following language: 'You konw how fast a bus driven by McGraw goes, and these boys on the wagon knew it, and when they saw him coming this time they got over in the

ditch to keep from being hit by him.' To which argument defendant objected and the court admonished the jury not to consider said remark. Defendant then moved the court to set aside the swearing of the jury, because the statement was prejudicial to the defendant, which motion was overruled by the court. To which ruling defendant at the time objected and excepted and still objects and excepts.''

It should not be disputed that the first quotation of the reputed argument was proper. The testimony of Bryant that he stopped the bus by the placing of his foot on that of McGraw, thus using 1,000 pounds pressure on the brake, authorized the deduction of counsel manifested by this clause of his argument. The objection to the second clause of the argument was sustained by the court, followed by an admonition to the jury not to consider the remarks. The trustee of McGraw cites and quotes from many opinions of this court to sustain the insistence that he is entitled to reversal because of the argument of Ayer's counsel. The pronouncement in the cases cited is not disputed. Their applicability is denied by Ayers. The arguments which were condemned in the opinions in those cases are not analogous to that in the present one. We are not convinced that the propounding of the objectionable questions to the witnesses of McGraw, when considered in connection with the argument of counsel of Ayers, as McGraw's trustee insists they should be considered, were calculated to influence the jury in its verdict, or are such as to justify a conclusion that an injustice was done the cause of McGraw, sufficient to warrant a reversal.

An argument to a jury is not reversible error, except where counsel so widely departs from the adopted rules of practice as to indicate a design and purpose to deceive, and to create a miscarriage of justice and to obtain a benefit for his client, which the facts do not warrant by pursuing an undue course approaching corruption. Hines, Director General, v. May, 191 Ky. 493, 230 S. W. 924; Standard Sanitary Mfg. Co. v. Brian's Adm'r, 224 Ky. 419, 6 S. W. (2d) 491. The court admonished the jury to disregard the argument. The law presumes that it obeyed the admonition. An admonition of the court, in such cases, cures such errors.

It was the duty of the jury to obey the admonition of the court, and, the contrary not appearing, it is pre-sumed that it did so.

A hypothetical question was propounded by Ayers to Dr. Anderson. It is claimed that it embraced facts which were not in evidence, and therefore it was in-competent, and the objection thereto should have been sustained. In his brief, the trustee claims that the question is based upon the statement that Ayers took hold of the door of the bus, at the time of the impact, and was holding to it with his left hand when he was thrown from the bus; his left foot striking the hard surface of the road; that immediately after the acci-dent he was exceedingly nervous; and that his toe and foot were bruised, the toe severely stubbed. It is argued that these facts are not similar to those proven. It is also argued that the hypothetical question omitted the fact he was in a former accident.

It is the established rule that a hypothetical ques-tion propounded to an expert must be based upon, and related to, the facts proved in the case. Kentucky Traction & Terminal Co. v. Humphrey, 168 Ky. 611, 182 S. W. 854; Wigginton v. Wigginton's Ex'r, 205 Ky. 613, 266 S. W. 245. This principle is fundamental. New York Life Ins. Co. v. Long, 211 Ky. 656, 277 S. W. 978. Also, such question calling for a conclusion instead of the giving of opinion as to the effect of the matter submitted to the witness by a hypothetical question is improper and constitutes an error. Sam-uels v. Willis, 133 Ky. 459, 118 S. W. 339, 19 Ann. Cas. 188; Ætna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Madison Coal Corporation v. Altmire, 215 Ky. 283, 284 S. W. 1068; Cincinnati, N. O. & T. P. R. Co. v. Ross, 212 Ky. 619, 279 S. W. 1075. New York Life Ins. Co. v. Long, supra, is presented by the trustee as illustrative of the basis of the criticism of the hypo-thetical question. The difference between the hypo-thetical question propounded to the witness in that case and the present one is, in the former, these prevailing principles were disregarded, which is not true in the present one. Ayers testified that he took hold of the door and was thrown out of the bus, his left foot under him, and that he was dragged along, still holding to the bus, possibly the door. He described the immediate effect of this experience. Ayers claims that he went

to McGraw at the place of the accident and made known to him the fact he was injured. McGraw stated that some one came to him, "shaking," when he told him there was nothing the matter with him, he was just scared. The only difference between the facts which McGraw here insists were not included in the hypothetical question to Dr. Anderson, and those embraced in it, is in phraseology, not in substance. A close examination and a comparison of the facts appearing in the hypothetical question with the proven facts convince us that the contention that it fails to meet the requirements in such cases is without foundation. It is persistently and vigorously argued there is no evidence to show that Ayers' injury was the direct or proximate result of the collision of the bus and the automobile. In like manner it is urged that it was caused solely by his own negligence in leaving his seat and stepping into the ditch after the bus had slowed down. The testimony of Ayers, corroborated by that of Dr. Humes and by that of McGraw, to the effect that some one came to him "shaking," is practically the only evidence showing that he was injured at the time of the collision. The passengers on the bus were in their seats, and, of course, inside the bus at the time Ayers claims that the door came open and he was thrown upon the road. It is easy to see that in the excitement incident to the occasion—each passenger looking out for his own safety and welfare—they did not see Ayers at the time he claims he sustained his injury. Dr. Humes testified that, after the arrival of Ayers the next day, in Louisville, he began to treat his injury, when he discovered a "fresh" injury, accompanied by discoloration and swelling. Viewing the evidence disinterestedly, with an unbiased mind, it cannot be doubted that the evidence showing Ayers was injured at the time of the collision presented a prima facie case, as to this issue, authorizing its submission to the jury. The evidence showing McGraw's negligence is sufficient for the submission of this issue to the jury. The rule is, where there is any evidence of a substantial nature, the question is for the jury. Owens v. National Life & Accident Ins. Co., 234 Ky. 788, 29 S. W. (2d) 557; Woods v. Jaglowicz, 235 Ky. 637, 32 S. W. (2d) 1; Terrell v. Flack's Adm'r, 236 Ky. 325, 33 S. W. (2d) 23; National Life & Accident Ins. Co. v. Etter, 236 Ky. 418, 33 S. W. (2d) 302; Payne v. High Splint Coal Co., 239

Ky. 634, 40 S. W. (2d) 299; Pirtle's Adm'r v. Hargis Bank & Trust Co., 241 Ky. 455, 44 S. W. (2d) 541; Taylor's Adm'r v. Hargis Bank & Trust Co., 241 Ky. 36, 44 S. W. (2d) 549. The probative force of the testimony of Ayers and Mrs. Marquess, and others, including Dr. Humes, was for the jury. Rader v. Goe, 239 Ky. 288, 39 S. W. (2d) 486. Their testimony was something of substance and consequence, not vague or uncertain, lacking in quality of proof or evidence to induce conviction, and it was the province of the jury to measure and weigh its probative value. United States Fidelity & Guaranty Company v. Antle, 240 Ky. 243, 42 S. W. (2d) 1; Park Circuit & Realty Co. v. Ringo's Guardian, 242 Ky. 255, 46 S. W. (2d) 106; Iseman v. Hayes, 242 Ky. 302, 46 S. W. (2d) 110. The jury in this jurisdiction are the triers of the facts, and we are not authorized to disturb its verdict, even where it believes one witness in preference to a greater number testifying in behalf of the opposite party, however much his evidence may overbalance plaintiff's evidence, Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813. 36 S. W. (2d) 630, or conflict with it, Jewell v. Janes, 238 Ky. 63, 36 S. W. (2d) 875; Travelers' Insurance Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216; Bryson v. Raum's Adm'r, 243 Ky. 121, 47 S. W. (2d) 927. Viewing the evidence in behalf of both Ayers and McGraw, the bus and the automobile were two agencies, although acting entirely independent of each other, whose joint and concurring negligence was the proximate cause of Ayer's injury; the two causes, one of the two being negligent, and the negligence of the other contributing, combining to injure him, and must be regarded as the proximate cause of his injury. City of Louisville v. Hart's Adm'r, 143 Ky. 171, 136 S. W. 212, 35 L. R. A. (N. S.) 207; Louisville Taxicab & Transfer Co. v. Reno, 237 Ky. 452, 35 S. W. (2d) 902. It is insisted that Ayers was himself negligent in leaving the bus at the time he did so. The facts are that the two approaching machines were in the act of colliding with each other, which was calculated to injure the passengers on the bus. Ayers was in imminent danger because of the negligence of the operator of the bus, according to the testimony in his behalf, which by reason thereof was in the act of colliding with the automobile then being negligently operated, according to the testimony in behalf of McGraw. Such concurrent negligence of the

operators thereof created a situation which justiefid Ayers in the exercise of ordinary care and prudence, or such as would be exercised by an ordinarily careful and prudent person situated as he was to believe, and to have reasonable grounds to believe, that he was in imminent danger of peril, and thereby he was placed in an emergency, and, in the circumstances he had a right to use any means that appeared to him to be reasonably necessary to avoid such danger, either actual, or to him reasonably apparent. And if, while exercising such care, he jumped off or left the bus, and in doing so he chose the wrong course, or did the wrong thing, such was not negligence on his part. Louisville & N. R. Co. v. Molloy's Adm'x, 122 Ky. 219, 91 S. W. 685, 28 Ky. Law Rep. 1113; Big Sandy & Kentucky River Railway Co. v. Keaton, 206 Ky. 156, 266 S. W. 1056; Higgins v. Forkner, 211 Ky. 588, 277 S. W. 983. It is fairly shown by the evidence that the ultimate result of Ayers' injury was the amputation of his leg by the removal of the limb above the knee.

It is argued that the verdict of the jury is excessive, the result of passion and prejudice. Without detailing the evidence showing mental pain and suffering, finally resulting in amputation, there is no indication that the verdict of the jury awarded him an excessive amount, other than the sum fixed by it.

In East Tennessee Telephone Co. v. Jeffries, 160 Ky. 485, 169 S. W. 825, 826, we said:

"We have affirmed verdicts in the following cases as not being excessive: L. & N. R. R. Co. v. Moore, 83 Ky. 675, where a brakeman recovered a verdict for $9,000 for the loss of a leg; South Cov. Street Ry. Co. v. Weber, 82 S. W. 986, 26 Ky. Law Rep. 922, a verdict for $10,000 for the loss of a child's hand; L. & N. R. R. Co. v. Smith, 135 Ky. 462, 122 S. W. 806, a verdict of $12,500, where a man 44 years old lost one hand, and was otherwise crushed; Price & Lucas v. Haley, 137 Ky. 305, 125 S. W. 720, a verdict of $9,000 in favor of a man 57 years old for the loss of an arm; and C. & O. Ry. Co. v. Davis, 58 S. W. 698, 22 Ky. Law Rep. 748, where a boy nine years old recovered $10,000 for the loss of a foot."

In Norfolk & Western Railway Co. v. Thompson,

161 Ky. 814, 171 S. W. 451, the plaintiff's leg was so mangled and crushed an amputation was necessary, leaving eight inches of his leg attached to his body. A verdict for $10,000 was approved by this court. We are not convinced that the verdict is excessive or that the amount awarded Ayers was the result of passion and prejudice. Nothing appears in the record showing passion or prejudice, influencing the amount of the verdict. Considering the absence of some contradictory evidence, respecting the permanence of the injury, the amount of the recovery cannot be regarded as excessive.

Criticism of instruction No. 1 is presented on the ground that it does not define the duty of either the driver of the bus or of the automobile. Instruction No. 2 is objected to, with the insistence that it does not limit the degree of care which the owner of the bus should have exercised in the control and management of his bus, and operate it in the manner set out in the petition. Instruction No. 3 defines the duty of McGraw. It is insisted that the petition sets out specific negligence, and instruction No. 2 is pitched on general negligence. Instruction No. 5 defines the measure of damage, including such sum as will reasonably and fairly compensate him (Ayers) for any medical, surgical, or hospital bills. The objection to No. 5 is predicated on the insistence that no physician testified with any degree of certainty that the loss of his leg could be traced to the wreck. McGraw offered instructions A, B, C, D, E, F, G, H. Instruction A is substantially instruction No. 3, in so far as it defines the duty of McGraw, except A only required McGraw to exercise ordinary care, when it was his duty to exercise the highest degree of care for the safety of his passengers as indicated in instruction No. 3. If instruction No. 3 contains the vice of which McGraw now complains, the same is found in an instruction offered by him. Having offered it, he may not now complain that the court gave one practically in the language of that offered by him. Moise v. Burton, 197 Ky. 538, 247 S. W. 744. Instruction B defines the duty of Mrs. Marquess, and is substantially in the language of instruction No. 3, in this respect. Instruction C authorized the jury to find for the defendant if the car operated by Mrs. Marquess came suddenly in front of his bus, and so close in front of it that McGraw could not in the exercise of ordinary care, with the means at his command, have stopped or

checked the speed of the bus in time to avoid its striking the Marquess' car. The evidence in behalf of neither Ayers nor McGraw authorized the giving of this instruction. Accepting the view of McGraw and his witnesses, the bus was on the extreme right, and its operator was guilty of no negligence whatsoever, while that in behalf of Ayers shows that McGraw fumbled the brake, operated the bus into and on the center of the highway, and beyond; thereby interrupted the passage of Mrs. Marquess' automobile between the wagon and bus, and that this was a contributing cause of the collision. The testimony of Ayers as to McGraw "losing his head," or becoming confused, is corroborated by the testimony of Bryant. The testimony of those who arrived in automobiles immediately after the accident supports that of Ayers and Mrs. Marquess. The bus, after the automobile came in view, could and doubtless would have been stopped on the extreme right side of the road, leaving ample room, considering its admitted width, for the passage of the Marquess automobile, and avoided the collision, but for the manner of its operation after the automobile came in plain view, some 50 feet or more, in front of the bus. McGraw owed to Ayers as a passenger the duty to exercise the highest degree of care for his safety, and, if he created, or helped to create by his negligence, the peril in which Ayers was placed, as the evidence in his behalf establishes, then McGraw cannot be permitted to say, after the emergency arose, he did all he reasonably could with the means at hand to avoid the collision. Knapp v. Gibbs, 211 Ky. 278, 277 S. W. 259.

The instructions in every case should submit only such issues of fact as to which there is a contrariety of evidence. The instructions which were given amply and fully presented the issues about which there was a contrariety of evidence, and the refusal to give instruction C was not prejudicial to the substantial rights of McGraw. Illinois Central Railway Co. v. Skinner's Adm'x, 177 Ky. 62, 197 S. W. 552. Instruction D and C are practically identical, except D directed the jury to find for defendant, if the Marquess car was operated at an unreasonable rate of speed at the time of the collision. Instruction E directed the jury to find for the defendant, if it believed from the evidence that Ayers got out of his seat or attempted to open the door of the bus, or, while out of his seat, and attempting to open

180

the door, he was thrown from the bus, and that but for so doing he would not have been injured, to find for the defendant. The court properly gave to the jury an instruction on contributory negligence; therefore he did not err in refusing E. Our discussion of Ayers' leaving his seat when placed in imminent danger as it appeared to him is sufficient consideration of instruction E. Instruction F is the same as E, but in a shorter form. Instruction G is an instruction on constributory negligence which was correctly presented to the jury by instruction No. 6. Instruction H was given, and correctly informed the jury that, if Ayers was injured by the negligence of defendant, yet if it believed from the evidence that he failed properly to care for his injury, and that by reason thereof the amputation of his leg was necessary, to find for him only such sum as would reasonably compensate him for mental pain and suffering endured, and for the diminution of his power to earn money, as was the proximate result of his injury, including nurses', surgeons', and physicians' bills incurred by him, if his injury had been properly treated and cared for by him. Instruction No. 1, which is the subject of extended criticism, simply submitted to the jury the question to be determined by it from the evidence in connection with the other instructions, whether he was injured by reason of the collision of the automobile of Mrs. Marquess and the bus in which he was a passenger. We observe no error in this instruction. The instructions were carefully and properly prepared, and presented the issues in a succinct, clear manner. On a careful, diligent, and earnest review of the case as presented, it is our conclusion that McGraw received at the hands of the jury, under appropriate instructions, on sufficient and competent evidence, a fair and impartial trial. Nothing is presented, either in the record or argument of counsel, authorizing a reversal.

Wherefore the judgment is affirmed.