## Southeastern Greyhound Lines v. Buckles.

Nov. 28, 1944.

R. W. Keenon, and Woodward, Dawson & Hobson for appellant.

W. W. Downing for appellee.

OPINION OF THE COURT BY JUDGE HARRIS—Reversing.

Broadway is one of the principal thoroughfares of the City of Louisville, and its general course is east and west. Fifth is a north-south street and intersects Broadway at a right angle. Across Broadway, from curb to curb, and immediately east of Fifth, there is a pedestrian's cross-walk, marked by parallel white lines. At this point the traffic, both pedestrian and vehicular, is directed and controlled by traffic lights. At about 10:30 on the night of December 3, 1942, at a point within the cross-walk and some few feet north of Broadway's south curb, the appellee was struck and injured by one of appellant's busses—operated by its driver Wells— which had come from the south on Fifth Street and turned east on Broadway. As a result of the accident and his consequent injuries, the jury awarded the appellee damages in the sum of $5,000. Being dissatisfied with that verdict and the court's judgment thereon, and its motion and grounds for a new trial having been overruled, the appellant has come to this Court.

Whatever the alleged errors in the lower court, only two are briefed: First, that appellant was entitled to a continuance on account of the absence of its only eye witness, its driver, who is now in the armed forces; and, second, that instruction No. 3 was prejudicially erroneous. Since we have reached the conclusion that appellant is entitled to a new trial under the second ground, we shall not comment with respect to the first, except to say that in the light of the entire record it is our opinion that the lower court did not abuse a sound discretion in denying a continuance.

Although some fourteen witnesses testified either in person or by deposition, only two of them were eye witnesses—the appellee and the driver of appellant's bus. The driver testified that he was traveling north on the east side of Fifth; that he stopped immediately back of the corner at Broadway; that when the signal light flashed green to the traffic on Fifth, he put the bus in motion and turned east on Broadway at a speed of about two miles an hour, signalling with the horn and with his arm as he did so; that he saw the appellee and

a woman coming towards the bus; that he brought his vehicle to a stop, and that the appellee walked into its right front corner and bumper. The appellee, who was on the south side of Broadway, testified that when the traffic light cleared he looked both up and down Broadway and then stepped into the cross-walk; that he had walked from twenty to twenty-five feet when he was struck by the front center of the bus and knocked for a distance of six or seven feet; that no horn was sounded and that he did not see the bus at any time before the accident.

Instruction No. 3 reads:

"It was the duty of Wells driving the bus to exercise ordinary care, as just defined, and that duty included the duties

"A. Of giving reasonable notice by the usual signals of his intention to turn from 5th Street eastward into Broadway,

"B. Of giving expression of his intention to so turn, and of the direction which he intended to turn by extending his hand from the left side of his cab,

"C. Of keeping a lookout.

"D. Of giving the right of way to any one using the crosswalk if he saw or by the exercise of ordinary care as already defined could have seen such persons in danger from the movement of his car bringing his coach to a stop if necessary to avoid collision.

"If you believe from the evidence that Wells failed to observe any one or more of these duties and for that reason the coach and Buckles came into collision and Buckles was thereby injured, then you should find for Buckles.

"But unless you so believe from the evidence you should find for the defendant."

3-A. The expression "usual signals" is, per se, a stranger to both the statute and to common law; and it is too general and too vague, and allows a jury too much room for speculation and conjecture, for this court to establish a precedent for its use by approving its employment in the present case.

3-B. The appellee testified that he never saw the bus; and the driver's statement that he did give the

signal was uncontradicted. Under these circumstances it was error for the court to give this instruction. Mc-Graw v. Ayers, 248 Ky. 166, 58 S. W. 2d 378.

While it is true this court has held, in cases so numerous as to render a citation of them unnecessary, that an instruction may be erroneous without being prejudicial, it is, nevertheless, a practice which should not be encouraged. It is only in a case which is clear and free of all doubt on the point that an instruction which is erroneous can be said by the court to have been without prejudicial effect on the minds of some of the jurors. Under the facts and circumstances of the present case, we are of the opinion that 3-A and 3-B were sufficiently prejudicial to entitle the appellant to a new trial. Upon another trial the court should give, in lieu thereof, an instruction with reference to the horn.

3-C is correct. 3-D is probably a little more favorable to the appellant than it was entitled to.

Judgment reversed and case remanded for a new trial consistent herewith.

Whole Court sitting.