## Ken-Ten Coach Lines, Inc., v. Siler.

November 8, 1946.

264

Stephens & Steely for appellant.

C. B. Upton for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

The Ken-Ten Coach Lines, Inc., operates a bus line out of Williamsburg, Kentucky. On September 20, 1945, one of its buses going from Williamsburg to Corbin, Kentucky, overtook a passenger automobile traveling in the same direction. The bus collided with the automobile, was deflected to the left, and overturned. There were twelve passengers on the bus, including Singleton Siler who later brought this action to recover damages for personal injury which he claimed he suffered in the accident. The jury returned a verdict for $3,500 for the plaintiff, and, from the judgment entered thereon, the defendant has appealed.

Reversal of the judgment is sought on three grounds: (1) The evidence failed to show any negligence on the part of the driver of the bus, and the defendant's motion for a directed verdict in its favor, made at the conclusion of all the evidence, should have been sustained; (2) the court erred in instructing the jury; and (3) the verdict is grossly excessive.

Appellant insists that the uncontradicted evidence shows the following facts concerning the accident: The bus overtook an automobile traveling in the same direction, and the driver of the bus sounded his horn. The

automobile moved to the right, but, when the bus was only 20 feet away, suddenly swerved to the left in the path of the bus and the bus driver was unable to avoid the collision. The bus left the concrete pavement, crossed the berm of the road, and went into the ditch. When the left front wheel struck the ditch, which was 12 inches deep and 10 or 12 inches wide, the driver lost control, the bus continued forward up a steep bank, and then turned over on its right side. The right front tire of the overtaken automobile blew out before the collision, and it is appellant's theory that the blowout occurred just as the driver of the bus undertook to pass; that the automobile began to swerve to the right and the driver, attempting to straighten it in the road, swerved it to the left of the center line immediately in front of the bus. It is contended that, under these facts, the accident was unavoidable.

We think, however, there was some evidence from which the jury might reasonably infer that the accident would not have occurred if that degree of care required of a common carrier had been exercised at all stages of the transaction. Three of the passengers and the driver of the bus, Charles E. Morgan, were the only eyewitnesses who testified concerning the accident. Two of the passengers, including the appellee, were unable to say how the accident happened. They only knew there was a collision, and that the bus swerved to the left, ran up a bank, and overturned. John M. Higgins, a school teacher, boarded the bus at Spruce Creek nine or ten miles west of Corbin and ten minutes before the collision occurred. He was sitting on the right-hand side in the third seat from the rear of the bus. The road was straight for a distance of 300 or 400 yards west of the point of collision, and he saw the automobile 100 or 200 feet in front of the bus apparently out of control, or, as the witness expressed it, "I first saw the car going along—it didn't look like he was going very fast. As we got close it looked like something was wrong with him; he began to pull across the center line and as we got closer I noticed he was wiggling." The bus was traveling at a speed of 45 miles an hour, and its speed was not reduced prior to the collision. The bus driver did not sound the horn or give any signal before he attempted to pass the automobile. The witness stated that he later went

to the scene of the accident and made certain measurements. The pavement was of concrete 20 feet wide and the berm on the left side of the road at the point of collision was 9½ feet wide, leaving a space of 16½ feet between the ditch and the left side of the automobile if the latter was 3 feet to the left of the center line. The witness testified that the overtaken vehicle was "2 feet or maybe 3 feet" over the center line when the bus was swerved to the left to avoid a collision. The testimony of this witness was sufficient to take the case to the jury on the issue as to whether the driver of the bus exercised that degree of care required on the occasion in question. If his testimony is true, the driver of the bus, had he been keeping a proper lookout ahead, could have seen the automobile "zigzagging" in the road in time to have reduced the speed of the bus materially and to have passed to the left of the automobile in safety. On cross-examination Higgins was confronted with a written statement made immediately after the accident and one made in the presence of appellant's attorney about ten days later. In the statement made at the time of the accident the witness said that in his opinion "the driver of the passenger car who had a blowout and was across the road in front of the bus" was at fault, and in the later statement said "the bus was starting to pass a car in front when this car had a blowout." The effort of the witness to explain these statements and to reconcile them with his testimony at the trial are not wholly convincing, but they were before the jury to be considered by it only for the purpose of affecting the credibility of the witness. The court properly so admonished the jury.

The court gave ten instructions, some of them lengthy, and appellant complains of instructions 1, 2, and 3, and especially of instruction A given on the court's own motion. Instruction No. 1 told the jury, in substance, that if they believed from the evidence that the plaintiff was injured by reason of the collision between the automobile and the bus upon which the plaintiff was a passenger, and further that the collision was caused by the negligence of the operator of the bus, the law was for the plaintiff. The instruction concluded:

"But unless the jury shall believe from the evidence that the said Singleton Siler was injured in and by reason of the collision between the bus on which he was a

passenger and the automobile mentioned in the evidence upon the occasion mentioned in the evidence, the law is for the defendant, and the jury should so find.''

The instruction is a copy of instruction No. 1 given in McGraw v. Ayers, 248 Ky. 166, 58 S. W. 2d 378, and found in Stanley on Instructions, section 253. The appellant in the Ayers case complained of the instruction because it did not define the duty of either the driver of the bus or of the automobile. These duties were defined in other instructions, and it was held, in effect, that instruction No. 1 was not improper when the instructions were considered as a whole. So, in the present case, the instruction when read in connection with the other instructions was not prejudicial. However, since the judgment must be reversed on another ground, the court will, on another trial, substitute for the last paragraph of instruction No. 1 the words ''but unless you so believe, the law is for the defendant, and you will so find.''

Instruction No. 2 is criticized because it uses the term ''highest degree of care'' three times. It is conceded that it was the duty of the driver of the bus to exercise the highest degree of care, but it is argued that it was error to stress the term by unnecessarily repeating it. We are unable to see how the use of the term three times in the instruction was prejudicial to appellant or how the repetition could have been avoided. The instruction, except for names, is exactly the same as the instruction approved in McGraw v. Ayers, 248 Ky. 166, 58 S. W. 2d 378; Stanley on Instructions, section 253.

Appellant complains of instruction No. 3 because it told the jury that among the duties imposed upon the driver of the bus were the duties ''to drive at a reasonable rate of speed'' and ''to keep a lookout ahead.'' The plaintiff's case was pitched on the theory that the overtaken automobile had a blowout and began swerving back and forth across the center line of the road a sufficient distance ahead to have enabled the driver of the bus to reduce its speed and avoid a collision if he had been keeping a proper lookout ahead. The evidence authorized the giving of the instruction.

Instruction No. A reads:

''The court instructs the jury that if you shall believe from the evidence that the automobile came sud-

denly on the left-hand side of the road in front of the defendant's bus, and so close thereto that the driver of the bus, in the exercise of the highest degree of care, with the means at his command, could not stop the bus or avoid hitting the automobile, and that the bus driver, prior thereto, was exercising and observing the duties required of him by these instructions, then the law is for the defendant and the jury will so find.''

This instruction is criticized because it uses the term ''in the exercise of the highest degree of care'' instead of ''in the exercise of ordinary care,'' it being argued when an emergency arises a common carrier owes to its passengers only the duty of exercising ordinary care. The care owed by a carrier to its passengers never changes in degree. It is always that degree of care which prudent and skillful persons engaged in the same business usually observe under similar circumstances and is designated the ''highest degree of care.'' Louisville & N. R. Company v. Gregory, 279 Ky. 295, 130 S. W. 2d 745, 746. A bus driver confronted with an unexpected crisis not caused by his own negligence ''is not called upon to exercise the same ordered judgment as under other and more ordinary circumstances,'' Lyons v. Southeastern Greyhound Lines, 282 Ky. 106, 137 S. W. 2d 1107, 1109, but he must exercise that degree of care usually observed by prudent and skillful bus drivers under similar circumstances, which is ''the highest degree of care'' as that term is usually defined. Instruction No. A was not erroneous.

Appellee testified that he was 82 years of age at the time of the accident; that two of his ribs were broken, he was ''hurt over the left eye,'' received a cut on his right arm, and his right shin was skinned. He was taken to Smith Hospital in Corbin, where he remained eleven days and was treated by Dr. F. S. Smith. Dr. Smith described appellee's injuries and the treatment of them as follows:

''He had a cut and abrasion over his left eye, also an abrasion or cut on his right wrist and hand, and my diagnosis—he also had a fracture of the 10th and 11th ribs, and a skinned place on his shin, and a multiple of minor bruises about the body. * * * I treated the wounds—the cuts and abrasions with antiseptic dress-

ing, and I strapped his chest with adhesive plaster over the area of the fractured ribs to remove as much as possible the pain, as well as the movement of the chest wall.''

No stitches were required. When asked if it was necessary to keep the appellee in the hospital eleven days, the witness answered:

''* * * he could have been taken home if he had had somebody who could have taken care of him properly. But as I understood at that time he had no place to go that he could be taken care of properly.''

After Dr. Smith testified the appellee was recalled and asked about his left eye. He answered: ''That eye is mighty bad. I can't see out of it.'' These questions and answers then followed:

''Q. Is that your left eye? A. Yes, and it was my best eye before I got in that wreck. I could see better out of it than the other one.

''Q. How was your eye injured? A. I never noticed it until I started to read. I can't read. I could read without glasses before this happened and now I can't hardly read now. It's mighty bad and it hurts.

''Q. How often does it hurt? A. I just can't see out of it, that's all.

''Q. Does it water, or not? A. Oh yes, it waters.

''Q. Did you have any pain like that or did your eye water before this wreck? A. No, I never did.

''Q. Have you been to an eye doctor? A. Yes, I have been up to Dr. Moss, and he said—.''

He was not permitted to state what Dr. Moss said. Dr. Moss was not introduced as a witness. Dr. Smith had said that any pain in the left eye could have resulted from the accident or could be due to some other cause. The injuries, aside from the two fractured ribs, consisted of superficial bruises and abrasions. The evidence as to an injury to the eye was entirely too vague and speculative to support a recovery. There is no medical evidence of permanent injury, and although appellee claimed at the trial four months after the accident that he still suffered some pain, the symptoms were wholly

subjective. In practically every instance where a comparable verdict was upheld, there was some showing of permanency of injury and loss of earning power. In the absence of such a showing, similar or smaller verdicts, where the injuries were greater than those suffered by the appellee, have been set aside as excessive. Pagliro v. Cleveland, 302 Ky. 306, 194 S. W. 2d 647; Fischer v. Eby, 272 Ky. 554, 114 S. W. 2d 768; Jefferson Dry Goods Company v. Dale, 257 Ky. 501, 78 S. W. 2d 305. Under the facts disclosed in the record, we are constrained to hold that the verdict for $3,500 is excessive.

Judgment is reversed with directions to grant appellant a new trial.

Judge Siler not sitting.